## Julia Ann McGowan, Appellant, *v.* Bailey, Wilson & Company.

[Marked to be reported.]

*Decedents' estates — Intestate laws—Widow— Tenants in common—Accounts—Trespassers.*

Under the intestate laws there is no hostility in the estates devolving upon the widow and children of an intestate, which gives the right of enjoyment to either to the exclusion of the other. Unless there be a severance of the inheritance the widow cannot treat her cotenants or their grantees as trespassers, merely because they have actively managed the common estate, and have received the whole of the rents or proceeds.

*Tenants in common—Coal mines—Accounting—Act of April 25, 1850.*

An intestate died leaving to survive him a widow and children. Included in his estate were coal lands upon which mines were opened. The grantees of the children went into possession of these lands and mined them without any objection upon the part of the widow. After nearly all the coal was mined the widow filed a bill in equity under the act of April 25, 1850, P. L. 573, for an accounting. *Held,* that the widow was not entitled to compel the defendants to account as trespassers, but only as cotenants.

*Mines and mining—Tenants in common—Accounting—Demand for account—Coal in place—Measure of damages—Custom.*

Where one of several tenants in common mines coal and takes the pro-

ceeds thereof, he is liable to account to his cotenants for the value of the coal in place.

On the bill in equity by one tenant in common against another for an account of coal mined, it appeared that the plaintiff made no demand for years for an account, or for her share of the coal. The evidence tended to show that the slack was never accounted for by operators, nor payment exacted for it by owners in the neighborhood where the land was situated. *Held*, that in view of the fact that plaintiff had made no demand for an account for years, it was a fair presumption she did not intend to exact more than was paid by other owners of coal in that region.

*Statute of limitation—Tenants in common—Mines and mining—Interest.*

An intestate left to survive him a widow and thirteen children. Three of the children bought the interests of the others in the land and conveyed the coal without reservation of their mother's life estate, and the deed was put on record. The grantees of the coal mined it for many years without the mother making any demand for an account. *Held*, (1) that the grantees of the coal were trustees of the mother's share of the proceeds of the coal, and that they could not plead the statute of limitations as a bar to her right to an account; (2) that the mother was entitled to interest for the time that the grantees retained possession of the proceeds of her share of the coal.

Argued Nov. 4, 1896. Appeal, No. 105, Oct. T., 1896, by plaintiff, from decree of C. P. No. 1, Allegheny Co., March T., 1893, No. 93, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account.

The material portions of the master's report appear by the opinion of the Supreme Court.

Plaintiff filed the following exceptions to the report.

1. In not finding that the McGowan farm, including about sixty-six acres, embraced forty and one fourth acres of coal, of which defendants have practically mined all, for while six acres remain unmined, it is useless to any one but defendants, is valuable to them, can be removed by them, and was left in place to keep open a way for them to other coal in which plaintiff has no interest.

2. In that while finding the lump produced to be one hundred and five thousand bushels per acre it omits to find that the quantity mined was thirty-four and one fourth acres, aggregating a total lump produced of three million five hundred and ninety-six thousand two hundred and fifty bushels, of the

average value of 4.33 c. per bushel, and a slack product of forty-five thousand bushels per acre, aggregating a total of one million five hundred and forty-one thousand two hundred and fifty bushels, of an average value of 1.44 c. per bushel.

3. In not finding that defendants, under protest, account for three million bushels of lump coal and admit they sold it for $129,442.50. That they claimed credit as against that sum for $134,492.25 as the cost of placing the coal at the tipple. That they admit that the latter sum includes also the cost of getting to the tipple all the slack, and that the profit of mining according to that method of bookkeeping is derived chiefly from the slack. But they have persistently refused to account for the proceeds of said slack. .

4. In not finding defendants admit sale of lump
　only of 30 acres at 100,000 bushels per acre at
　4.31475 c.　.　.　.　.　.　.　$129,442.50
That there should be added the lump of 4¼ acres
　at same price　.　.　.　.　.　.　18,337.68
Also 5,000 bushels of lump per acre for 34¼ acres,
　equal to 171,250 bushels, at same price .　.　7,389.00
Also bank leave for 6 acres unmined at 105,000
　bushels per acre at 50c. per 100 bushels　.　3,150.00
Also 45,000 bushels slack per acre for 34¼ acres,
　equal to 1,541,250 bushels, at 1.44 c. per bushel　22,194.00
　　　　　　　　　　　　　　　　　　　　　　　　　──────────
Total .　.　:　.　.　.　.　.　.　$180,513.18

### Contra.

Defendants claim credit without fur-
　nishing items, as follows, viz. :
Placing whole product, lump and slack,
　at tipple　.　.　.　.　. $134,492,25
Taxes paid (no items)　.　.　685.20
Trestle, etc., (no items) .　.　.　2,560.63
For $10,900, paid for their title,
　and $1,117.19 damages recovered
　against them for injury to surface,
　both inadmissible on any theory　.　$137,738.08
　　　　　　　　　　　　　　　　　　　　　　　　　──────────
Leaving a balance in defendants' hands, if
　they are allowed to recoup, of.　.　.　$ 42,775.10

6. In finding forty cents per one hundred bushels as the leasing value of said coal—the average of plaintiff's testimony is fifty cents per one hundred bushels, defendants adduced no evidence on that point. The value of coal depends less on the improvements than the value of the improvements on the coal.

7. In finding the average of the McGowan coal per acre to be $300, from 1884 to 1894. The average of plaintiff's testimony was $325 per acre, with cash payment and annual instalments, all secured, to be paid before the coal was taken out. Defendants' testimony as to the value was irrelevant as relating to coal remote from the McGowan coal.

8. In not finding that defendants have deforced plaintiff of her dower by detention of her share of the proceeds of said coal, claiming exclusive perception and ownership thereof, denying her right, and pleading adverse possession perfected by the statute. Deforcement is simply the withholding of the dower by the heir or alienee.

9. In not finding that on the theory that plaintiff is not dowress, but is tenant in common, the facts mentioned in the preceding paragraph constitute an ouster or disseizin and trespass.

10. In not finding that the statute of Merton applies to give plaintiff damages for the deforcement, and the statute of Gloucester to give her costs. The statute of Merton extends to proceedings in equity.

11. In not finding that defendants, as alienees of the heirs, are not entitled to recoup the cost of any improvements made by them before assignment of plaintiff's dower. Everything added by the money, labor or skill of defendants is an improvement within the meaning of the discussion.

12. In not finding that plaintiff is tenant in dower, and as such not tenant in common with defendants as remaindermen; and even if she were cotenant with them they would be entitled to credit for expenses incurred on the common property only while acting in amity and good faith and within their legal right; such credit is never due to a trespasser. Said defendants having denied plaintiff's right and detained her share after demand by suit, pleading adverse possession perfected by the statute, are self-declared and self-convicted trespassers.

13. In not finding that whether plaintiff is regarded as dow-

ress as in Paul's Exr. v. Paul, 36 Pa. 282, or under the act of April 25, 1850, as tenant in common, defendants are regarded as her bailiffs, or trustees, bound to account in good faith and pay over her share, and liable in damages or interest for any unjust detention of the same.

14. In not finding that even were defendants tenants in common with plaintiff, as they could not lease plaintiff's share to strangers without her consent, so they could not lease it to themselves; nor could any other lease to them without her express authority. And that her consent will not be implied for the benefit of avowed trespassers.

14½. In finding that bank leave or the leasing value is the basis on which defendants should be held to account for the reasons mentioned in the preceding exception.

15. In that the basis of the account recommended by the report is founded on a theory which disregards the law of dower, and the established facts of the case, viz : the marriage, the seizin and death of the husband, the deforcement or disseizin of the widow and denial of her rights, the exclusive perception of the profits and refusal to allow her to participate, the plea of adverse possession perfected by the statute, and that as a matter of fact and law that plea is grounded in trespass.

16. In the rejection of the basis of account claimed by plaintiff, viz : the value at the tipple of all the products of the mine, both lump and slack, the latter including nut and dust, without deduction of the cost of placing them there.

17. If right in rejecting plaintiff's basis of account, the report errs in rejecting defendants' basis of account, viz : value at the tipple, less the cost of placing there. . . .

18. The report further errs in finding that the act of April 25, 1850, P. L. 573, relating to accounts between tenants in common of mines, applies to this case. . . .

19. The report further errs in not finding that defendants having charged against the sum accounted for as the proceeds of the lump coal the cost of getting the slack to the tipple, were bound to account for the proceeds of the slack to entitle themselves to the credit claimed of $134,492.25.

20. The report further errs in denying that plaintiff has dower, and that her interest in the estate of her deceased husband is properly called dower.

The court overruled the exceptions and confirmed the report.

*Error assigned* was in confirming report.

*J. S. Ferguson* and *Joseph Forsythe*, with them *E. G. Fergu-son*, for appellant.—Where defendants are deforcers or disseizors, makes practically no difference in results, as neither of them is entitled to credit for improvements, although they do increase the issues or profits of the property. As to defacers or disseizors we cite: Thompson v. Morrow, 5 S. & R. 289; Powell v. Monson & Brimfield Mfg. Co., 3 Mason, 347; Coke on Littleton, 32. As to trespassers we cite: Foster v. Weaver, 118 Pa. 42; Wooden-ware Co. v. U. S., 106 U. S. 432. No one can charge the estate of another without authority: Gregg v. Patterson, 9 W. & S. 209; Putnam v. Tyler, 117 Pa. 586; Price v. Hobbs, 47 Md. 359; Ralston v. Ralston, 3 Greene, 533; Rohn v. Odenwelder, 162 Pa. 346; Heller's App., 116 Pa. 534; Gaskins v. Gaskins, 17 S. & R. 390; Smyser v. Smyser, 3 W. & S. 437.

Though a widow's statutory interest in the lands of her husband under the act of 1833 comes not within the definition of common law dower, it is nevertheless an estate of freehold: Watterson's App., 95 Pa. 312; Hinnershits v. Bernhard, 13 Pa. 517; Diefenderfer v. Eshleman, 113 Pa. 308; Evans v. Evans, 29 Pa. 277.

If plaintiff had dower defendants are guilty of deforcement of dower, which is simply the withholding of the dower by the heir or alienee: Hopper v. Hopper, 1 Zab. (N. J.) 543; Seaton v. Jamison, 7 Watts, 535; Paul's Exr. v. Paul, 36 Pa. 270; 2 Scrib. on Dow., 731; Gibson v. Winslow, 46 Pa. 380; Coleman's App., 62 Pa. 252; Foster v. Weaver, 118 Pa. 42; Fulmer's App., 128 Pa. 24.

Deforcement is the withholding of the right. It cannot be doubted that plaintiff's right has been withheld: Irvine v. Hanlin, 10 S. & R. 221; Bush v. Gamble, 127 Pa. 43; Bennet v. Bullock, 35 Pa. 364; Critchfield v. Humbert, 39 Pa. 427; Filbert v. Hoff, 42 Pa. 97; Lane v. Harrold, 72 Pa. 267.

The widow of a tenant in severalty is not a tenant in common with the heirs: 17 Am. & Eng. Ency. of Law, 701; Irwin v. Covode, 24 Pa. 167; Bradfords v. Kents, 43 Pa. 474.

All the cases relating to the measure of compensation for minerals or timber taken insist on good faith as the condition

of the lower measure (mere value in place) : Forsyth v. Wells, 41 Pa. 291 ; Herdic v. Young, 55 Pa. 176 ; Sedgwick on Dam., 1852 ; Ege v. Kille, 84 Pa. 333. ·

A purchaser of real estate is bound to take notice of all the recitals in the chain of title through which his own title is derived : Gibson v. Winslow, 46 Pa. 380 ; Aultman's App., 98 Pa. 505.

*J. McF. Carpenter*, for appellees.—The conveyance created a separate estate in the coal: Weimer's Law of Mining in Pennsylvania, 160.   The sale by the children with the knowledge of the mother was an unequivocal claim of. ownership : Culler v. Motzer, 13 S. & R. 355.

Had this coal been sold by John McGowan, Sr., without his wife joining in the deed, she would have had twenty-one years after his death in which to bring suit : Care v. Keller, 77 Pa. 487 ; Winters v. DeTurk, 133 Pa. 359 ; Landis v. Torney, 4 Penny. 151.

The statute begins to run when the right of action accrues. It would not be just or equitable to allow plaintiff to recover after having. slept on her rights. for more than twenty-five years, during which innocent parties expended large sums of money, incurred great risks and sustained heavy loss, and compel pay-·. ment, not of a share of the profits, but of one third of the estimated value of the privilege of mining : 1 McCord's Legal & Equitable Rights of Married Women, 2d ed. sec. 546 ; Hall v. Vandegrift, 3 Binn. 384 ; Watterson's App., 95 Pa. 312 ; Armstrong v. Caldwell, 53 Pa. 284 ; Troxell v. The Lehigh Crane Iron Co., 42 Pa. 513 ; Barksdale v. Garrett, 64 Ala. 277 ; Tuttle v. Willson, 10 Ohio, 24; Steiger v. Hillen, 5 G. & J. 121 ; Chew v. Bank, 9 Gill, 361; Ralls v. Hughes, 1 Dana, 407 ; Willis v. Bucher, 2 Binn. 455 ; Urket v. Coryell, 5 W. & S. 60 ; McAteer v. McMullen, 2 Pa. 32 ; Knouff v. Thompson, 16 Pa. 357 ; Kerr v. Kitchen, 17 Pa. 438 ; Bellas v. Lloyd, 2 Watts, 401; Hottenstein v. Lerch, 104 Pa. 454 ; Jacques v. Weeks, 7 Watts, 261 ; Maul v. Rider, 59 Pa. 167 ; Meehan v. Williams, 48 Pa. 238; Rowe v. Ream, 105 Pa. 543 ; Leach v. Ansbacher, 55 Pa. 85 ; McCray v. Clark, 82 Pa. 461 ; Garrard v. Pgh. & Co. R. R., 29 Pa. 154.

One party is not estopped even by declarations by which the

other party was not misled and upon which he did not rely: McKnight v. Bell, 135 Pa. 358; Heller's App., 116 Pa. 534; Herman on Estoppel, 431; Wright's App., 99 Pa. 432; Eldred v. Hazlett, 33 Pa. 307; Ormsby v. Ihmsen, 34 Pa. 462; Water's App., 35 Pa. 523; Washabaugh v. Entriken, 36 Pa. 513; Ream v. Harnish, 45 Pa. 376; Sunderlin v. Struthers, 47 Pa. 411; McKerrahan v. Crawford, 59 Pa. 390; Reel v. Elder, 62 Pa. 308; Rhodes v. Childs, 64 Pa. 18; Musser v. Oliver, 21 Pa. 362; Ayres v. Wattson, 57 Pa. 360; Sensinger v. Boyer, 153 Pa. 632.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

On August 12, 1863, John McGowan, of Mifflin township, Allegheny county, died intestate, leaving a widow, this plaintiff, and thirteen children. At his death he was the owner of, and resided with his family on, a farm of about sixty-six acres, more than half of which was underlaid with coal. After his death the widow continued to live on the farm down to the commencement of this suit; the other children conveyed their interests to their three brothers, James, John and William, who by deed of August 3, 1868, with clause of general warranty, conveyed by metes and bounds all the coal under forty acres to John O'Neil, and his title became vested in these defendants by deed October 26, 1880. At the date of John McGowan's death, there were two opened coal banks on the farm. In July, 1884, these defendants entered, put up valuable improvements, commenced mining and removing the coal and continued their operations down to the commencement of this suit. On October 20, 1893, the widow filed her bill against defendants, averring she was entitled to her statutory dower of one third of the rents and profits of the coal, and praying an account. Defendants by answer denied her right of dower in the coal, and averred she had received her dower and support from the surface of the farm; further, that she knew of the conveyance by her sons and of defendants' mining operations, yet prior to the suit, had made no demand for dower, nor had she offered to contribute any part of the expenses of mining; they further set up the plea of the statute of limitations. There were several pleas partaking of the nature of demurrers, such as want of jurisdiction, nonjoinder of children of John McGowan, and nonjoinder of

warrantors of title, which were properly overruled, and James F. Robb was appointed master to first determine from the facts and law whether plaintiff was entitled to an account. He reported, she was, and a decree to that effect was made by the court below. Mr. Robb becoming ill, John D. Shafer, Esq., was appointed in his stead, and he proceeded with the hearing, and stated an account, showing a balance due plaintiff of $4,900 with interest from date bill was filed. Both parties filed exceptions which were overruled by the court and the report confirmed, and from that decree we have this appeal by plaintiff.

All of appellants' assignments of error bear upon two points, viz., the master's findings of fact as to quantity of coal mined, and his conclusion as to the basis of computation; both, it is argued, are not warranted by the evidence or the law. The master's finding of quantity mined was as follows: Area mined, 35 acres; quantity per acre, 105,000 bushels; number of bushels lump coal mined 3,675,000; slack coal mined 40,000 bushels per acre; total slack, 1,400,000 bushels. The defendants having other banks on adjoining land from which they were mining coal, it was impossible for the master to ascertain the exact output from this land by inspection of shipping or sales books; but the cubic feet mined, shows with proximate accuracy the quantity, and that method was adopted. The plaintiff claimed she was a tenant in dower, and was deforced of her dower by defendants, therefore they must account as trespassers.

It is not worth while to discuss the precise nature of the widow's interest in this farm of which her husband died seized, and of which there had been neither appraisement nor partition, and give to it a name capable of a strict-legal definition. The act of assembly of 1833 declares: "Where such intestate shall leave a widow and issue, the widow shall be entitled to one third part of the real estate for the term of her life." While it remains in this situation, no matter what the estate may be called after appraisement or partition, it is a freehold estate in the land, and this she enjoys in common with the children of her husband, whose interest is the remaining two thirds. There is no hostility in the estates which gives the right of enjoyment to either to the exclusion of the other. The land descending from a common source, the intestate husband and father, the statute declares the quantum of the estate, and plainly intends

it shall be enjoyed according to their respective interests; and unless there be actual deforcement, the turning out or exclusion of her who is in lawful possession, all she is entitled to is an account from the children. Unless there be a severance of the inheritance, she cannot treat her cotenants as trespassers, merely because they have actively managed the common estate, and have received the whole of the rents or proceeds. These defendants being the grantees of the children, took precisely their place as cotenants with the mother. And the evidence shows clearly all parties so understood it. The mining proceeded without a word of objection on her part until nearly all the coal was mined out. She did not then proceed against them as trespassers, but filed this bill for an account of her statutory thirds of the rents, issues and profits of which her cotenants had received the whole. The bill, evidently, from the averments and prayer, was framed under the act of April 25, 1850, which provides " that in all cases in which any coal or iron ore, mines or minerals have been or shall be held by two or more persons as tenants in common, and coal, iron ore, or other mineral has been or shall be taken from the same by any one or more of said tenants respectively, it shall be lawful for any one of said tenants in common to apply by bill or petition in equity to the court of common pleas of the county in which the lands lie, praying that an account may be decreed and taken of all coal, iron ore, or other mineral taken by said tenants respectively; and said court shall thereupon proceed upon such bill or petition agreeably to the course of a court of Chancery, and shall have full power to make all orders . . . . that may appertain to justice and equity in the premises; and may cause to be ascertained the quantity and value of the coal, iron ore or other mineral so taken respectively by the respective parties, and the sum that may be justly and equitably due by, from and to them respectively, according to the respective portions and interests to which they may be respectively entitled in the lands."

Here, both parties had an interest in the land; the defendants being one of the tenants in common, and as is said by SHARSWOOD, J., in Coleman's Appeal, 62 Pa. 252: "A tenant in common exercises his undoubted right to take the common property, and he has no other means of obtaining his own just share than by taking at the same time the shares of his com-

panions.   The value of the ore in place is therefore the only just
basis of account."   But as in the case before him, no evidence
had been given as to the value of the ore in place, the finding
of the master that the value of the ore at the mine's mouth,
after deducting the expenses of putting it there, was adopted as
an equitable basis on which to state the account.

The master in this case determined that plaintiff was entitled
to one third the value of the coal in place, and in this conclu-
sion we concur.   He further found that value was 40 cents per
hundred bushels.   The evidence before him justified the find-
ing.   He adopted as the quantity mined, the number of bushels
of lump coal, making no allowance for slack coal.   He bases
this finding on the evidence that what is universally under-
stood in that coal region or neighborhood by bank leave or coal
leave, is lump coal only, the slack being worth but little, is
never accounted for by the operator, nor payment exacted for
it by the owner; that it is considered a by-product, and goes
with the lump coal sold.   While we do not adopt this conclu-
sion as a rule applicable to all cases of account between coten-
ants of coal mines, we think no injustice was done by invoking
it in this case.   For years, plaintiff asked no account, nor made
demand for her share; it is a fair presumption she did not
intend to exact more than was paid by other owners of coal in
that region; if she intended to make an unusual demand, she
should have asserted it sooner.

As to defendants' plea of the statute of limitations, it cannot
prevail.   True, the three sons conveyed to O'Neil the predeces-
sors of defendants in title the coal without reservation of their
mother's estate, in 1868, and the deed was put of record; but
that was no assertion of a right hostile to her of which she was
bound to take notice.   As long as her possession was undis-
turbed, the paper title, even of record, did not impair her right,
while the same possession, being in the direct line of their title,
was notice to defendants, that as to her third, her claim was
unequivocal and unabated.   It was not until July, 1884, that
defendants entered upon the land and commenced mining the
coal.   Being in the undisturbed possession, no right of action
could accrue until her cotenants' liability to account for her
share of the coal began; by reason of their relation in estate to
her they had a right to mine and receive the money for all the

coal, including her third; this was therefore not an act hostile to, or in denial of her right. As to her third, they were merely trustees for her, and long before lapse of time raised a presumption of payment, she made a legal demand for an accounting. It has been held over and over again, since Dillebaugh's Estate, 4 W. 177, that the "statute of limitations in such case is out of the question." That the heir is a trustee as to her thirds; that an alienee of the land is in no better situation than the heir, and that even the taking of a recognizance or other security on the land in proceedings in partition to protect her interest, is merely a collateral security for her statutory estate. We are of the opinion the master's conclusion that plaintiff was entitled to one third of 40 cents on every hundred bushels of lump coal removed, or $4,900 was correct, but we do not concur in his finding that she was entitled to interest only from the commencement of the suit or filing of the bill. The master gives no reason except that she made no demand, for striking off the interest which is always computed on the balance due on an accounting, from the date it ought to have been paid. She was no more bound to demand, than they were to tender payment. They received the money of the common property, and as to the third of the value of the coal in place, were her bailiffs. The mean time found by the master, during which defendants had plaintiff's money, was from July 1, 1890; this was an unjust detention, nearly three years longer than the master allowed, and from that date they should pay interest. Therefore the decree is affirmed with the modification that interest on the $4,900 amount due, shall be paid from July 1, 1890, to date of this decree.