## Tredway *v.* Kaufman, Appellant.

*Bankruptcy—Bankrupt act of 1898, sec. 60—Preference—Evidence— Interest.*

In an action by a trustee of a bankrupt to recover an amount of money alleged to have been paid as a preference in violation of the 60th section of the national bankrupt act, a witness may be permitted to testify to an interview had by him with the bankrupt and the defendant seven months prior to the giving of the preference, where it appears that from the date of the interview to the date of the preference the defendant had a more or less intimate connection with and knowledge of the affairs of the bankrupt.

Where a person claims a legal set-off under the terms of clause (*c*) of section 60 of the bankrupt act, it is necessary for such person to show specifically that the payment became "a part of the debtor's estate." It must be shown that the estate was benefited in some way by the payment.

In an action by the trustee of a bankrupt to recover an amount alleged to have been paid by the bankrupt to a creditor as a preference, interest cannot be charged until demand made, and if no demand was made, interest will only be payable from the date of the suit.

Argued May 7, 1902. Appeal, No. 147, April T., 1902, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1899, No. 790, on verdict for plaintiff in case of W. T. Tredway, Trustee of Gustave Kaufman, Bankrupt, v. J. S. Kaufman. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit by a trustee in bankruptcy to recover the amount of an alleged preference. Before McCLUNG, J.

When Joseph Keeling was on the stand, the following offer was made:

Mr. Castle: I propose to prove by the witness on the stand that in January, 1898, Gustave Kaufman then being indebted to him in quite a large sum of money, and his notes having gone to protest, that he declined to sell any more stone to Gustave Kaufman, whereupon he was telephoned for to go to the office of Joseph S. Kaufman, in the Times Building, city of Pittsburg, where he met Joseph S. Kaufman and Gustave Kaufman, and there discussed the financial condition of Gustave Kaufman with both Gustave Kaufman and Joseph S. Kaufman, the defendant here; and that Joseph S. Kaufman there told him that Gustave Kaufman was not a good financier, and that he was in a bad state financially, and that he, Joseph S. Kaufman, was going to take charge of his affairs, and assured the witness that if he would continue to ship stone to him he would see that it was paid; whereupon witness continued to ship stone until the month of June, accepting promissory notes for the same upon the express promise of Joseph S. Kaufman that he would see that they were paid; this for the purpose of showing, first, the bankrupt condition of Gustave Kaufman, and second, the knowledge of Joseph S. Kaufman of his bankrupt condition.

258    TREDWAY *v.* KAUFMAN, Appellant.

Statement of Facts—Opinion of the Court. [21 Pa. Superior Ct.

Mr. Schoyer: That is objected to as irrelevant and immaterial. It is too remote. It has nothing to do with the question of whether or not on August 4, Joseph S. Kaufman had reasonable cause to believe that at that time Gustave Kaufman was bankrupt, and that the money that he was then receiving was preferential within the meaning of the act. Objection overruled. Exception. [3]

The court refused binding instructions for defendant [2] and charged in part as follows:

[I am asked to charge with regard to an alleged set-off here. I do not see that there is any evidence which would justify me in saying that there is money that went into the estate of the bankrupt here. There is evidence that he paid some money that seems to have been appropriated to some other debts; but there is nothing which would justify a set-off, as I understand the testimony in the case. So that if you find that there was this preference, and that it was known, or that the defendant had reasonable cause to believe it was a preference, you will find for the amount of that payment.] [1]

Verdict and judgment for plaintiff for $1,309.94. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them; (3) ruling on evidence, quoting the bill of exceptions; (4) in allowing interest from August 4, 1898.

*S. Schoyer, Jr.*, for appellant, cited: Darby v. Boatman's Saving Institute, 4 N. B. R. 600 (Fed. Cases No. 3,571); Collier on Bankruptcy (3d ed.), p. 369; Shuman v. Fleckenstein, 15 N. B. R. 224 (Fed. Cases, No. 12,826); In re Phelps, 3 A. B. R. 396.

*H. L. Castle*, with him *Stone & Stone*, for appellee, cited: Toof v. Martin, 13 Wall. 40; Wager v. Hall, 16 Wall. 584; Otis v. Hadley, 112 Mass. 100; Forbes v. Howe, 102 Mass. 427.

OPINION BY BEAVER, October 13, 1902:

This is an action by the trustee of a bankrupt to recover an amount of money alleged to have been paid to the defendant in

violation of the provisions of the 60th section of the national bankrupt act. The bankrupt and the defendant were brothers. August 4, 1898, the bankrupt paid the defendant $1,086.64. August 8, 1898, the defendant advanced to the bankrupt, at his request, $767 for the alleged purpose of meeting a pay roll. August 20, 1898, the bankrupt filed his petition for adjudication in bankruptcy and subsequently was duly adjudged and decreed a bankrupt.

Three questions arise, involving the construction or interpretation of three clauses of the 60th section of the bankrupt act of 1898: 1. Was the payment made August 4, 1898, by the bankrupt to the defendant, a preference within the meaning of the act? 2. Was the advancement of $767 August 8, 1898, a set-off under the provisions of clause *c* of said section? 3. Did the payment of August 4, 1898, if a preference, bear interest from its date?

The clauses of section 60 of the bankrupt act involved herein are as follows:

"Section 60. Preferred creditors. (*a*) A person shall be deemed to have given a preference, if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(*b*) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person.

"(*c*) If a creditor has been preferred and afterwards, in good faith, gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

1. There does not seem to have been much doubt as to the

insolvency of the debtor at the time of the payment, August 4, 1898. It was practically conceded. If, therefore, the defendant, the person receiving the payment, "had reasonable cause to believe that it was intended thereby to give a preference," the right of action would be complete and the trustee would have a right to recover in this case.

The evidence as to the defendant's knowledge of the financial condition of the bankrupt was somewhat detailed and covered a considerable portion of time prior to the alleged preference and the adjudication in bankruptcy. The plaintiff offered testimony of a witness as to an interview had by him with the bankrupt and the defendant in January previous to the adjudication in regard to the financial condition of the bankrupt, for the purpose of showing (1) the bankrupt condition of Gustave Kaufman, and (2) the knowledge of Joseph S. Kaufman of his bankrupt condition. This was objected to and the offer admitted under objection and the admission assigned for error. If the testimony had been of a single transaction over seven months prior to the alleged preference, and there had been nothing to show a continuing knowledge by the defendant of the affairs of the bankrupt, the objection might have had some validity as being remote and disconnected from the alleged bankruptcy, but other events tended to show that from that time down to the date of the payment, which constitutes the alleged preference, the defendant had more or less intimate connection with and knowledge of the affairs of the bankrupt, including an assignment to him and others of all of the bankrupt's property in May or June of the same year. We think the evidence, under the circumstances, was properly admitted and that it and all the other facts tending to show that the defendant had reasonable cause to believe that the payment to him was intended to give a preference were fairly submitted to the jury. Their finding upon that subject was conclusive and the preference established.

2. Was the payment of $767, by the defendant to the bankrupt, August 8, 1898, a legal set-off, under the terms of clause *c* of section 60 aforesaid? The testimony of the defendant in regard to that is as follows: " Q. Well, after you advanced these moneys, you got from him a check for how much? A. One thousand eighty-six dollars and sixty-four cents.

Q. What did you do with that? Did that wipe out these advances? A. I applied it toward that and on August 8—that was after his trouble—he came and told me that he owed a lot of money to his hands, and I finally consented to let him have the money. Q. How much? A. Seven hundred and sixty-seven dollars. Q. That you actually give him too? A. Yes, sir. Q. These various advances went into the business? A. Yes, sir. Q. And then, after he had quit business, you returned out of the money he had given to you $767 to apply to the laboring people that he didn't have money enough to pay? A. Yes, sir. Q. Was there or was there not any arrangement by which you were seeking to get, or did get, or was there an understanding that you were to get any preference in the matter of these payments? A. No." In order to entitle the defendant to successfully set off the payment of $767 against the money received by him, it was necessary for him to show that the amount which he sought to set off had become a part of the debtor's estate. Does this testimony show it? We cannot see that it does. The money was advanced for the express purpose of making certain specific payments. Whether it was applied or not does not appear. If the money had been applied to preferred claims under the act and the amount for distribution by the trustee had been thereby increased, the estate of the bankrupt would have been to that extent indirectly benefited, but this does not appear, and it seems to us that it was necessary for the defendant to show specifically that the payment became "a part of the debtor's estate," in order to entitle him to use it as a set-off. This was not shown and we cannot, therefore, convict the court of error in refusing to say to the jury that the set-off was established. The court below, in' the opinion refusing a new trial, said: "This $767 did not literally become a part of the bankrupt's estate. Evidence that the debtor got the money for another purpose certainly is not evidence that he turned it over to the trustee. The most that defendant can ask—and this we would probably hold—is that money shown to have been given and used to pay a preferred debt would entitle the defendant to a set-off." It would, of course, not be necessary to show distinctly that the money was turned over to the trustee but it was necessary to show that the estate was benefited in some way by the payment. This was not shown

clearly; indeed it does not affirmatively appear that the estate was in any way benefited directly or indirectly. The first assignment, therefore, is overruled.

3. There remains the question of interest. There seems to have been nothing said upon the subject at the trial. The court directed the jury, in case they found that there had been a preference, to find for the amount of the payment. The plaintiff admits that interest should not be charged until demand made and, as no demand was shown until suit brought, interest would be payable only from the date of the suit. There should, therefore, be a deduction, as of the date of the verdict, $63.45. Let this be deducted from the judgment as of January 15, 1902, and with this correction let the judgment be affirmed.