Everly, Appellant, *v.* Shannopin Coal Company.

Argued October 26, 1939.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and RHODES, JJ.

*J. I. Hook,* of *Scott & Hook,* for appellant.

*Walter C. Montgomery,* for appellee.

OPINION BY STADTFELD, J., March 2, 1940:

On April 3, 1905, the plaintiff, Minor S. Everly, had become the owner by descent and by grant of an undivided three-fourths of a certain tract of land situate in Dunkard Township, Greene County, Pennsylvania, containing 21.093 acres, being tract of land of which his father, Joseph Everly, had died seized.

On January 4, 1910, Syrena E. Lockard, being also seized, as heir of her father, the said Joseph Everly, deceased, of the remaining undivided one-fourth of said

tract of land, conveyed to Josiah V. Thompson her undivided one-fourth of all the coal of the Pittsburgh or River Vein within and underlying the said tract of 21.093 acres of land, together with mining and other rights and privileges appurtenant thereto, as particularly set forth in paragraph four of plaintiff's bill, including particularly the right to mine and remove all of said coal, with rights of ventilation and drainage and "the right to mine, remove and carry through and under said tract of land any other coal, coke or supplies, belonging to the said party of the second part, his heirs and assigns," title to which said undivided interest in said coal and mining rights, etc., by divers good conveyances became vested in the defendant, Shannopin Coal Company, defendant, November 15, 1921, as tenant in common with said Minor S. Everly, plaintiff.

The said Joseph Everly heirs' coal tract is situate near the east central part of a large contiguous block or field of Pittsburgh or River Vein of coal, containing several thousand acres (owned by appellee in fee except for the Everly heirs' tract) situate in Dunkard, Perry, and Greene Townships, Greene County, Pennsylvania, which field completely surrounds the common (Everly) tract and is the property of appellee.

This is a proceeding in equity to require the defendant (1) to account for the quantity and value of the coal mined from the common coal, (2) and to account for the quantity of the coal from other lands owned by it, transported through the haulage way through the common coal and to pay appellant his proportion of the reasonable rental value for the use of said haulage way.

An answer was filed by defendant to the bill. Hearing was had before FETTERHOOF, P. J., specially presiding, sitting as chancellor, who rendered findings of fact, conclusions of law, and entered a decree nisi, to which exceptions were filed by appellant. The exceptions were dismissed and a final decree entered.

The Shannopin Coal Company, in the mining and

development of the aforesaid block of coal, planned and projected a main passage or haulage way known as No. 2 Flat through the common coal, and later proceeded to drive haulage way through its coal up to the common coal.

Sometime during the month of February, 1930, and prior to defendant's entry into the common coal, the defendant company, by its agent, Mr. Latell, had two meetings with appellant, seeking an amicable division of the common coal. Appellant would not agree to a division, stating that he wanted to sell his interest in the common coal. Following the failure to agree upon a division of the common coal, defendant, on the 15th day of April, 1930, entered the common coal, and the only coal mined therein was that necessary to construct No. 2 Flat haulage. From April 15, 1930, to June 1, 1937, defendant was in exclusive possession of the No. 2 flat haulage, through the common coal.

The defendant mined and removed 4573.08 tons of coal from the common coal, which had a royalty value as coal in place, as found by the court below, of 15¢ per ton. Defendant transported 1,006,784 tons of coal owned by it, through No. 2 Flat haulage in the common coal for which appellant is entitled to recover his proportionate part of the rental right of way value thereof. From September 1, 1934, to June 1, 1937, No. 2 Flat was the only haulage way defendant had and used to transport its coal from other lands beyond the common tract.

The chancellor found that appellant was entitled to receive from defendant, for the common coal mined, the sum of $514.46, with interest at 6 percent from September 1, 1934, to which finding no exception was taken by appellant.

The chancellor also found, inter alia, that the haulage way built by defendant through the common property was not necessary for the defendant to transport coal through the Everly tract to other lands of the defend-

ant, and that the defendant is not liable to pay the plaintiff haulage on a tonnage basis, as an established custom, for transporting coal through the haulage way on the Everly tract. He further found for the plaintiff appellant for the use of the haulage way in the sum of $1500 with interest from July 28, 1936, the date of the filing of the bill of complaint, to October 14, 1938, at 6 percent or $198.90, making a total of $1698.90.

On August 8, 1939, the chancellor dismissed appellant's exceptions to the findings of fact, conclusions of law and decree nisi and entered a final decree on August 14, 1939, from which appellant, Minor S. Everly, has taken this appeal.

There are but two questions involved in this appeal: (1) the basis for the ascertainment of the rental value of the haulage way through the common coal used by defendant to transport its own coal from other lands, and (2) the date from which interest is to be computed on the amount found due appellant from defendant.

The plaintiff in his bill demands a per ton haulage compensation for the use of this No. 2 Flat as a haulage way by defendant upon all the 1,006,784 tons of coal mined by defendant in its other properties beyond said Everly tract and transported through it along said No. 2 Flat, three-fourths of the sum so ascertained being payable to him as owner of an undivided three-fourths of said tract of coal and land.

Appellant, in support of his claim, sought to prove that the use of No. 2 Flat by defendant for its haulage way was necessary to reach the coal hauled through the common property. That this necessity was not an absolute one, but rather one of convenience is amply shown by the testimony. As a matter of fact, the defendant later made and used another haulage way which under the uncontradicted testimony had a much better grade than through the Everly tract. The finding of the chancellor that the haulage way through the Everly tract was not necessary for defendant in hauling its coal from

its own land through the common property to other lands of the defendant is amply supported by the testimony.

This action was brought to recover, under the Act of 1895, the share of "rental value" of the common real estate, or the "occupation rents" to which plaintiff claims to be entitled as tenant in common. The decree of the chancellor as to royalty value of the coal removed has been accepted by appellant. All the exceptions to the decree of the chancellor relate solely to rent and rental value. Hence, the only question now before this court is determination of the fair rent, together with interest, to be paid by defendant to plaintiff for this use of the entry through common property.

The Act of June 24, 1895, P. L. 237, 68 PS 101, gives to a co-tenant not in possession the right to recover a share of the rental value of the land, part of said Act being as follows: "In all cases in which any real estate is now or shall be hereafter held by two or more persons as tenants in common, and one or more of said tenants shall have been or shall hereafter be in possession of said real estate, it shall be lawful for any one or more of said tenants in common, not in possession, to sue for and recover from such tenants in possession his or their proportionate part of the rental value of said real estate for the time such real estate shall have been in possession as aforesaid; ......"

Under the above Act, one tenant in common may recover from his co-tenant a share of the rent which the co-tenant had received, or if the co-tenant is in actual possession may demand and recover a share of the occupation rents: *Lancaster v. Flowers,* 208 Pa. 199, 57 A. 526.

The first requisite step is to establish the fair rental value in the market of the property used. The burden rests upon plaintiff to prove such rental value by reliable data. No attempt was made by him to prove the market value, use value, or occupation value of the com-

mon property as used by the Coal Company, but rather to prove the economic value to the Company of the use so made, a wholly erroneous theory. That such measure is unjust and inequitable to the owner is made doubly clear when it is considered that if the user, under such standard, could prove no economic value was realized from the use made, the owner would recover nothing for the use and occupation of his property. The rental value or rather market rental value of the property used depends upon what rent it will command in the open market, not the purpose for which rented, but rather what the plaintiff could have gotten for it in the market had defendant not been in possession: *Williams v. Ladew,* 171 Pa. 369, 33 A. 329.

Appellant very properly concedes that appellee, as tenant in common with Everly in the common tract was rightfully in possession, with a legal right to mine and remove the common coal and that appellee is only liable to account for the use made by it of the entry way through the common coal "for the time it used the same for purposes other than mining the common coal." The measure of value for "the time it used" the common property manifestly could not be determined on a tonnage basis, but from rental value over the period when in use.

An important phase of this case is the fact that as successor in title to Syrena E. Lockard, the appellee acquired title not only to an undivided one-fourth of all the Pittsburgh coal seam in and under the Joseph Everly heirs' tract, but in addition and as appurtenant thereto certain mining rights and privileges, including the right of transporting through this tract any coal or supplies then or thereafter belonging to it. Therefore, the use of the chamber formed by excavation of No. 2 Flat entry by appellee as a passage way was not in derogation of appellant's rights, or a denial of his title in the common property, but a mere lawful use of the common property by a co-tenant who is responsible and

accountable to its co-tenant, as an ordinary tenant for the fair use or occupation value of the property, and not for its nuisance or holdup value, based upon any necessity for such use, nor based upon convenience or economic advantage.

Where there is no amount of rent fixed and ascertained, the landlord can recover a reasonable rent in an action of assumpsit for use and occupation: *M'Gunnagle v. Thorton,* 10 S. & R. 251. This same principle is again applied in later cases in Pennsylvania to tenants in common: *Peirce v. Peirce,* 199 Pa. 4, 48 A. 689; and to tenants by entireties: *O'Malley v. O'Malley,* 272 Pa. 528, 116 A. 500.

In *Tourisan v. Engard,* 30 Pa. Superior Ct. 179, the court states: "In general, the plaintiff in an action for use and occupation must prove a contract to pay either a stipulated compensation for the use of the land, or such sum as the use was reasonably worth." The proof may be either direct or presumptive: *Brolasky v. Ferguson,* 48 Pa. 434.

In an action for use and occupation of water, the court held the sum recoverable represents, not the value of the use of the premises to the defendant, but the value of it to the owner—that is what the owner could have gotten for it from others had the defendant not been in possession: *Williams et al. v. Ladew et al.,* supra.

Appellant sought to establish the value for use, according to his contention, on a basis of the "way-leave" rule which has been applied to measure compensation for the use of underground ways in England and in some jurisdictions in the United States. He frankly admits that he has been unable to find a decision in Pennsylvania in which this rule has been applied.

The principles and authorities relied upon by appellant to support this argument for compensation fixed on "way-leave grant" basis, are those where the person using the facility had been a "wrongdoer", a recognized trespasser, vi et armis, and not one in possession of

and making use of his own property held jointly with another.

The only testimony offered by plaintiff as to his right to compensation for use of the common property by defendant was designed to show, not rental value as declared in his bill and as permitted under the Act of 1895, but a rate per ton for haulage, based upon value to defendant of the use made, a standard applied to an admitted wrongdoer and trespasser, or measured by what someone, under economic pressure or physical necessity, in a "hard and tight situation" had been able to wring from another desiring or compelled to use the facility.

The testimony of plaintiff's witnesses was based either on the basis of a physical necessity to use this Flat No. 2 or on the basis of a nuisance value or a "hold-up value." The Act of 1895, supra, gives the right to recover the rental value but not on such a basis as one of the witnesses testified to.

L. C. Mechling, a witness on behalf of plaintiff, shows that each instance cited in support of his conclusion was based on the existence of some overruling economic necessity for use of an intervening property to reach other coal which, together with value and extent of property to be reached, or value of plant investment that would otherwise be lost, or other impelling considerations of like character, would fix the value of the use of the intervening property to the user, none of which are shown to exist in the instant case. In addition, he had no knowledge of the considerations that entered into the making of the contracts on which he relied.

The only other witness, W. S. John, an attorney called by plaintiff as an expert on the question of rental value, when asked by counsel to fix a rate per ton for use of Flat No. 2 stated: "A. Well, as I grasp the question, as I answer that I would like to make explanation. . . . . . . Intrinsically, naturally it may be worth nothing,

but this commodity in the trade, this commodity, as it arises in the coal business I look upon as one of necessity. It may be a nuisance value or a hold-up value, and it is, and I fix my value here in that class of cases where under the necessities of the case the parties agree upon it or use it for the purpose of a haulage way."

Appellant in the court below endeavored to establish the rental value on a wheelage or tonnage basis and relied on an alleged custom prevailing in mining operations for the operator to pay a fixed price on a tonnage basis for each ton of coal transported through the haulage way.

A custom or usage must be ancient, that is so old, continued and uniform, as to be generally known: *Corcoran v. Chess*, 131 Pa. 356, 18 A. 876. In order to establish the validity of a custom or usage it must have existed so long as to have become generally known and it must be clearly and distinctly proved: *Lockney v. Police Benefit Asso.* 217 Pa. 568, 66 A. 844.

In *Albus v. Toomey*, 273 Pa. 303, 116 A. 917, the Supreme Court held: "It is essential, before a usage,—combining numerous repetitions of acts, extending over a considerable period of time,—may be denominated a custom, that it be certain, continuous, uniform and notorious." Moreover, it must be generally known and must be proven by evidence so clear, uncontradictory and distinct as to leave no doubt as to its nature or character: *Adams v. Pitts. Ins. Co.*, 76 Pa. 411; *Corcoran v. Chess*, supra; *Lockney v. Police Benefit Assn.*, supra; *Prigg v. Preston*, 28 Pa. Superior Ct. 272.

Quoting from the opinion of the chancellor: "Under the evidence in this case we are not satisfied that the plaintiff has properly proven that such a custom was so certain, uniform, notorious and reasonable that it became binding upon the parties, but on the other hand, if it were so applied under the facts in this case it would not be fair and reasonable. We, therefore, conclude that plaintiff is not entitled to recover for his

proportionate part of the rental value of the common property by virtue of any custom on a tonnage basis for wheelage." It is quite clear, therefore, that the chancellor did not err in rejecting the testimony of the plaintiff's witnesses as not meeting the standard of competency to prove rental value of the particular property here involved.

George S. Baton, a witness called on behalf of defendant testified: "It is so rarely that a wheelage right is used in Western Pennsylvania, the only cases that I know where it was used was where it was absolutely necessary to go through the property to accomplish transportation to some fixed point, that I can't see that transporting through this tract was of any, couldn't tell any tonnage rate that it was worth ...... I don't think you understood my former reply with reference to tonnage. What I intended to say that you take each cent a ton of wheelage rate means a hundred dollars an acre for every bit of coal beyond it, and I felt that even a cent a ton for hauling through that property was a great deal more than it was worth, and therefore that the rate couldn't be established on a tonnage basis."

When asked to fix the fair rental value of the common property as used by defendant, and in view of its character and situation, from October, 1931, to June 1, 1937, we find: "A. That isn't taking into consideration the joint ownership, you don't mean? Q. You may waive that for the purpose of this answer? A. Oh, I think that $1500 would be a fair sum to pay them for the use of it. Q. That is for the whole period? A. The whole period."

That is the only competent, relevant testimony in the record on the question of rental value of the common property. That of the witnesses, Mechling and John, called by appellant in support of his claim, gave absolutely no testimony of rental value, but merely of rates obtained in certain instances of bargaining,

growing out of "hard and tight situations," economic or physical "necessity" for right of way through property of another, and also based on the value to appellee of the use made of the common property. Such evidence was clearly irrelevant and was rightly disregarded by the chancellor.

As to the right of defendant to remove the coal from the adjoining lands owned by it through Flat No. 2: Under the deed from Syrena E. Lockard and William Lockard, her husband, to Josiah V. Thompson, through which defendant acquired the undivided one-fourth interest in the Pittsburgh Vein of coal underlying the tract of land described in the deed, the mining rights and privileges provided as follows: "...... together with *the right to mine and remove all the coal, and with the free and uninterrupted right of way* into and under the said lands, at such points and in such manner for such ways, tracks and roads as may be necessary and proper for the purpose of ventilating, draining, digging, mining, operating and carrying away said coal *or other coal or coke,* without any liability for damages that might arise from the removal of any or all of said coal, or the manufacture of coke, without being required to provide for the support of the overlying strata or surface, and without being liable for any injury to the same or anything therein or thereon or the springs or water courses thereof; also with the right *to mine, remove and carry through and under said tract of land any other coal, coke or supplies now or hereafter belonging to the said second party, his heirs or assigns."* (Italics supplied).

In Thompson on Real Property, Vol. 1, Sec. 91, it is said: "A tenancy in common to a mine or mining tract is created by a conveyance thereof to two or more persons jointly, and the usual incidents of such tenancies pass by the conveyance. One of these incidents being the right of each tenant, in common with his co-tenants, to the possession of the premises held in common. Each

tenant is entitled equally with every other, to enter and take possession of any mines or minerals without molestation from outside parties ...... As in the case of co-tenancies of other properties, each co-owner has the right to open and work the mine ......"

The undivided interest of defendant in the common tract is part of a large tract or field of coal entirely surrounding the Everly tract, and which defendant planned to open, develop and operate as a unit mining operation. As was said by the court in *Westerman v. Penna. Salt Mfg. Co.*, 260 Pa. 140, 103 A. 539: "The usual and practical way of mining such coal is in a block of a thousand acres or more, and operating it as one mine, as defendant did here. In such case it would not seem practicable to follow first mining by second mining in each separate farm. In fact that method would defeat the plan for general mining of the block ...... Since the balance of the coal and the right to remove it belongs to defendant, as well as the space made by first mining, the mere fact that the removal of the ribs has been temporarily deferred to facilitate the general mining operation will not defeat defendant's right to use such space for the transportation of other coal."

The Westerman case had in it many of the elements involved in that phase of the present case now before this court for review, for there also, the plaintiff, owning an 80-acre tract, had sold to defendant the coal underlying same, with mining rights. This was one of several parcels comprising a block of about 2500 acres which defendant developed as a unit mining operation. From the opening, a main haulage way was driven through the coal vein in plaintiff's land and first mining done on his land, taking out practically all the coal except about 25% left in place as ribs and pillars to support the surface and protect the entry and haulage way. Plaintiff filed a bill to restrain the continued use of the haulage way to transport coal mined in other

tracts, no mining having been done on his land since 1908. The surface of plaintiff's land was intact, and the use of the underground passage had done him no harm. In discussing the principles involved in the case the court, said (p. 144) : "The deed vested in the defendant a corporeal estate in fee in the coal; and until that estate is terminated by the exhaustion of the coal, or lost by abandonment, the vendee is entitled to the possession of the coal, and also of the space made by its removal, *and may use such space in transporting coal from other lands.* In the case of *Lillibridge v. Lackawanna Coal Co.,* 143 Pa. 293, this court held that the owner of the coal also owned the chamber or space enclosing it, and, so long as such ownership continued, could use *such space for the transportation of other coal.* That case was expressly reaffirmed, and held to be a settled rule of property in the great mining regions of the Commonwealth, in the case of *Webber v. Vogel,* 189 Pa. 156. Both of the above cited cases are quoted with approval and followed in the opinion of this court by Chief Justice BROWN in *New York & Pittston Coal Company v. Hillside Coal & Iron Co.,* 225 Pa. 211, 214; and it is there held that, 'A lessee of coal cannot be charged for rental for the use of gangways on the demised premises in transporting coal from other properties.' The rule stated by our Brother POTTER, in delivering the opinion of this court in *Weisfield v. Beale,* 231 Pa. 39, 43, is applicable here, that, 'when the defendant bought the coal in the Donley tract, he took a fee simple estate in the coal, and so long as that estate existed, he could *haul through the gangways coal from other land.* In so doing, he was using his own property.' While a tract that is in open workable condition, is being mined, the fact that there may be a temporary suspension of operations therein will not deprive the mine owner of the right to use the driveways for transportation of other coal, where he is act-

ing in good faith and mining in the customary manner."
(Italics supplied)

The defendant in the instant case, therefore, under the grant to it in fee simple of an undivided one-fourth interest in the Pittsburgh coal seam was merely exercising its undoubted right, as tenant in common with plaintiff, when it entered into the common property and commenced mining operations thereon, and in so doing was neither a wrongdoer nor a trespasser, accountable only to plaintiff for the value in place of the mineral mined, and accountable to plaintiff for the fair rental value of that part of the common property which it might use at any time for its own purposes. This was equally true of the space from which the coal had been removed, and, subject to the proportionate interest of plaintiff in the common property, that right will continue until the mining operations cease and the common property is abandoned by defendant.

As to the question of interest: the appellant in the third, fifth and sixth assignments of error, takes exception to the fact that the chancellor did not allow interest on the award made for rental value for the use of the common property by the appellee. He took no exception to the award made by the chancellor of the amount of royalty to which appellant was entitled by reason of the mining and removing of his proportionate part of the coal mined and removed from the common property by the appellee, and to the fact that interest thereon was allowed from September 1, 1934, which is adopted as the average date upon which to compute interest upon the royalty value of this coal, because there was no evidence giving the exact dates of the removal thereof.

The case of *McGowan v. Bailey, Wilson and Co.*, 179 Pa. 470, 36 A. 325, relied upon by appellant, is readily distinguishable from the instant case. An entirely different question, however, is involved in the matter of

compensation to the appellant in this case for the rental value, or use, or occupation value of the common property. In such case the principle is that stated by Mr. Justice BREWER in *Kaufman v. Tredway*, 195 U. S. 271, 49 Law Ed. 190, appeal from this court. In the opinion we find (p. 273): "We see no reason to doubt the propriety of allowing interest on the claim from the commencement of the action. Such commencement is itself a demand."

That same case is reported in 21 Pa. Superior Ct. 256, where, on the question of interest, this court states: "The plaintiff admits that interest should not be charged until demand made and, as no demand was shown until suit brought, interest would be payable only from the date of the suit."

This phase of the action now before this court has to do with the unliquidated demand of the appellant upon the appellee, Shannopin Coal Company, that it account to him for the rental value of the common property used by it in transporting coal mined upon other properties of the Company through No. 2 Flat entry in the common property. The testimony of the plaintiff himself does not state that he had made, at any time, any prior demand upon the Shannopin Coal Company to account to him for the rental value, or use, or occupation value of the common property by the coal company, of which he complains in this action, there being no evidence whatever that any demand of this sort was made upon the coal company previous to the filing of the bill on July 28, 1936.

This was rightly adopted by the court as the effective date of the award made, and therefore the date from which should be computed interest upon plaintiff's proportionate part of the rental value of the common property so ascertained and fixed by the court from the evidence in this case.

This is not a case of restitution as it applies to the

question of rental value, and therefore the principles of restitution, to which appellant refers, are not applicable, nor is the principle stated in the McGowan case applicable.

In the case of *O'Neil v. Burnett,* 263 Pa. 216, 106 A. 246, the Supreme Court, in an opinion by Mr. Justice WALLING, said, at p. 221: "There being no allegations of a prior demand, it would seem that interest should be computed from the commencement of the suit." To same effect see *Robinson et al. v. Stover,* 320 Pa. 308, 315, 182 A. 145.

This is the principle adopted by the chancellor and applied to the facts in the instant case, and we therefore are of the opinion that there was no error in his awarding interest from that date when, upon appellant's own showing, the demand was first made, that is upon the filing of the bill on July 28, 1936.

After careful consideration of the entire record, we are of the opinion that the case was well tried and fairly disposed of in an able and exhaustive opinion by the chancellor.

The assignments of error are overruled and the decree of the lower court is affirmed. Costs to be paid by appellant.