## Hinski v. Stein, Appellant.

*Husband and wife—Liability of husband for tort of wife—Slander.*

A husband cannot be held liable in damages for slanderous words spoken by his wife where it appears that he was not present when the words were spoken, and had in no way aided or abetted, counseled or encouraged their utterance. The Married Persons' Property Acts of June 3, 1887, P. L. 332, and June 8, 1893, P. L. 344, have relieved the husband of such liability, which was formerly upon him under the common law.

Argued Oct. 1, 1917. Appeal, No. 21, Oct. T., 1917, by defendants, from judgment of Municipal Court of Philadelphia Co., May T., 1916, No. 288, on verdict for plaintiff in case of Nicholas Hinski v. Rosie Stein and George Stein, her husband. Before ORLADY, P. J., POR-

TER, HENDERSON, HEAD, KEPHART, TREXLER and WIL-
LIAMS, JJ. Reversed as to George Stein.

Trespass for slander. Before WHEELER, J.

The statement charged that Rosie Stein on April 28,
1916, spoke the following words to plaintiff's wife:

"Your husband (meaning plaintiff) is a thief, and I
can prove it. He stole a spigot out of my house, and the
pipe down the street he stole from the shop he works at."

It did not appear that George Stein was present when
the words were spoken, or that he had instigated or
abetted their utterance.

Verdict for plaintiff and against the defendants for
$50. Defendants appealed.

*Errors assigned,* among others, were (2) in refusing
binding instructions for defendants, and (3) portions of
charge quoted in the opinion of the Superior Court.

*William J. Lawson,* for appellants, cited: Gustave v.
Westenberger, 224 Pa. 455; Wiest v. Electric Co., 200
Pa. 148.

*F. Carroll Fow,* for appellee, cited: Hess v. Heft, 3
Pa. Superior Ct. 582; Quick v. Miller, 103 Pa. 67; Dear-
dorff v. People, 36 Pa. Superior Ct. 224.

OPINION BY HEAD, J., December 13, 1917:

As a sound basis from which to rightly view the ques-
tion involved, we may safely say it is at least anomalous
that one adult human being should be held responsible
for the tort of another. The general idea of right and
wrong thus indicated is emphasized when the record
affirmatively shows that the man punished by the ver-
dict and judgment in the case before us, was not present
when the wrong was done and had in no way aided or
abetted, counselled or encouraged its commission. His
liability, if any there be, rests wholly upon the fact he

was the husband of the woman whose use or abuse of language inflicted the wrong complained of.

An action was begun against a husband and wife to recover damages alleged to have resulted from the utterance by the wife of certain defamatory words of and concerning the plaintiff. The case was tried before a jury and resulted in a verdict against both defendants, upon which judgment was entered. Such verdict and judgment necessarily followed the instruction, as to the law of the case, given to the jury by the learned trial judge, to wit: "In this action the defendants are Mrs. Stein and her husband, and by virtue of the marital relation, the husband is liable for the torts of his wife regardless of the fact whether or not he may have been present at that time......The law says even in his absence the husband is liable for the torts of his wife; so, therefore, if you believe the story of the plaintiff and the testimony of his witnesses, you will be obliged to enter a verdict against both the husband and the wife."

No one will deny that at common law the husband was liable to respond in damages for the tort of his wife. If committed in his presence, it was presumably done by his order and direction; and as she was sub potestate viri and as he held the purse for the family, whether the contents of it came originally from his wife or otherwise, he was alone responsible. If the wrong was committed in the absence of the husband, he was responsible with her, which was but another way of saying, in effect, that he still continued to be the party really interested. Strange as this doctrine may sound to those who have not studied the history of the rise and development of the common law, it does not appear to be either illogical or irrational as a corollary to the proposition that during coverture, the husband was in the full possession, use and enjoyment of all of the property that had belonged to the wife before marriage. If it now appear that we have wholly departed from that conception of the status of husband and wife, with relation to proper-

ty rights, it ought to be true that the anomalous condition heretofore referred to and predicated entirely upon the old notions, should now be regarded as no longer existing. This would be but the application of the principle familiarly expressed in the maxim "cessante ratione cessat et ipsa lex."

Many years ago the legislature of Pennsylvania reached the conclusion the time had come when it was no longer reasonable or right that the mere existence of the marital relation should be visited with such disastrous consequences to the property rights of the wife. While the Act of 1848 still recognized many limitations, the later Acts of 1887 and 1893 have practically and almost completely emancipated the married woman, save in so far as it was thought to be for her benefit to restrain her separate action in regard to her property in the very few instances named. Section 2 of the Act of 3d June, 1887, declares: "A married woman shall be capable of entering into and rendering herself liable upon any contract relating to any trade, etc......and of suing and being sued either upon such contracts or for torts done to or committed by her in all respects as if she were a feme sole," etc. The act further declares that her husband need not be joined with her as either plaintiff or defendant, or be made a party to any action of any kind brought by or against her in her individual right. We are unable to see how that statute could be administered according to its letter or its spirit, were we to hold that the common law doctrine, to which we have referred, is still in active operation. The legislature again took action at the session of 1893. We find no evidence at all in the contents of the Act of 8th June, 1893, P. L. 344, that the legislature had any intention of either halting or retracing its footsteps along the path it had previously marked out. Section 3 provides: "Hereafter a married woman may sue and be sued civilly in all respects and in any form of action with the same effect and results and consequences as an unmarried

person," etc.   This statement but further emphasizes the legislative thought that, now the wife has been given the full use, enjoyment and control of her own property, she should, like every other adult human being, be responsible for the consequences of her own voluntary misconduct.

But we are not compelled to rest our conclusion on the reasoning to be drawn from a consideration of the earlier conditions upon which the mutual rights and responsibilities of husband and wife were predicated. In Gustine v. Westenberger, 224 Pa. 455, Mr. Justice BROWN was considering a situation where a wife had procured her brother to impersonate her husband and then forge his signature to a mortgage on his property in which she joined.   In considering the question that arose upon a scire facias sur mortgage under the facts stated, the learned justice said: "As to the third and last position of the appellant, that she ought to recover because the appellee is answerable for the torts of his wife, we need only say we know of no rule of law that ever permitted a husband's property to be taken from him on a deed forged by his wife, or the forgery of which was procured by her.   Since the passage of the Act of June 8, 1893, a married woman may be sued civilly in all respects and in any form of action with the same effect and results and consequences as an unmarried person, except that she may not be arrested or imprisoned for her torts.   Under that act she, and not her husband, is liable in damages for her torts."   Manifestly, in the case at bar no answer could be made to the language we have quoted, save to say that, as that proceeding was entirely in rem, the language last quoted was not necessary to support the conclusion reached, and may, therefore, be regarded as dictum.   Even if we were willing to go that far, and we are not, it appears to us the stage of dictum has been certainly passed when we consider the language of Mr. Justice POTTER in the late case of Smith v. Machesney et al., 238 Pa. 538.   As we regard

this case as conclusive of the one at bar, we briefly state the facts: the action was for damages resulting from the alleged negligence of the operator of an elevator, who was an employee of the wife alone, the said elevator being installed in a building which was her separate property. Suit was brought against both husband and wife, and a recovery had against both. In reversing the judgment as against the husband, the learned justice thus expressed the view of the court: "The husband seems to have been joined as a defendant in this case under the idea that the common law liability of the husband for the torts of the wife still prevails. But whatever may have been the rule at common law, we held in Gustine v. Westenberger (supra), that under the Act of 1893, the wife 'and not her husband, is liable in damages for her torts.' In the present case it was, therefore, not only unnecessary but improper to join the husband as a defendant. We do not understand that the claim in this case was made against the husband as an actual tort-feasor, but only by reason of his supposed responsibility for the tort of his wife." It does not appear to us that any attempt on our part to further elaborate this opinion would result in any substantial benefit.

There is no assignment of error that would warrant a reversal of the judgment against Rosie Stein, the actual tort-feasor. The action did not rest upon an alleged joint tort but on the separate tort of the wife for which the husband was erroneously believed to be answerable in damages.

It is therefore considered that the judgment as against Rosie Stein be affirmed, while as against George Stein it be reversed. The appellee to pay the costs of this appeal.