## Hench v. Jefford

*Edwin B. Fischer* and *S. E. Troutman,* for plaintiff.
*Luke Baker,* for defendant.

BARNETT, P. J., September 26, 1934.—This is an action in trespass against a husband to recover for injuries suffered by the plaintiff through an assault and battery committed by the defendant's wife, in his absence. The defendant has filed an affidavit of defense in the nature of a demurrer, denying liability for his wife's tort.

The plaintiff's statement of claim, alleging that the defendant is and for more than 10 years last past has been the husband of Elsie Jefford, residing with her in New Bloomfield, Pa., and that the aforesaid Elsie Jefford, "as the

result of an obsession or delusion of her mind, and without any reasonable or other cause therefor", on September 24, 1933, committed an assault upon the plaintiff, as the result of which she was thrown to the ground and seriously injured, states the facts upon which the defendant's liability is predicated in the following paragraphs:

"3. For many years prior to September 24, 1933, the said Elsie Jefford was of a vicious temperament and character, and for many years she had evidenced by acts, conduct, and words that she was demented or mentally deranged, and she had for some years prior to September 24, 1933, committed acts of violence upon herself and others, and had made various threats to other persons.

"4. By reason of the conduct of the said Elsie Jefford and of her state of mind, a situation was created which involved an unreasonable risk to the plaintiff and other persons because of the expectable actions of the said Elsie Jefford.

"5. The said Joseph B. Jefford, by reason of his having become the husband of the said Elsie Jefford, had taken charge and assumed control of her, and the said Joseph B. Jefford knew, and had reasonable cause to believe, that unless controlled she was peculiarly likely to inflict intentional harm upon others.

"6. By reason of the state of mind of the said Elsie Jefford and her conduct for many years prior to September 24, 1933, it was the duty of the said Joseph B. Jefford to have the said Elsie Jefford incarcerated in some institution for the mentally deficient, or to have her subjected to restraint or surveillance, or in custody.

"7. The said Joseph B. Jefford failed to carry out the duty imposed upon him, and failed to have the said Elsie Jefford under restraint or in custody, or incarcerated in some institution, or subjected to proper surveillance."

The substance of the defendant's contention is contained in the third paragraph of his demurrer, which reads:

"3. The only allegation against the defendant is that he failed to take steps to make it impossible for his wife to commit the tort alleged, and this is insufficient to impose any legal liability on the husband for his wife's alleged tort."

The brief for the plaintiff concedes that "unquestionably, in the ordinary case under the law of Pennsylvania a husband is not responsible for the torts of his wife committed under such circumstances" (not in the presence of the husband): Gustine v. Westenberger, 224 Pa. 455; Smith v. Machesney et al., 238 Pa. 538; Crouse et al. v. Lubin, 260 Pa. 329; Hinski v. Stein, 68 Pa. Superior Ct. 441; and states that the defendant "is not sued here because he is a husband. He is sued because as the natural guardian of Elsie Jefford he failed to protect the public and this plaintiff from her expectable actions."

The question to be determined is whether the law imposed a duty upon defendant, as the husband of a wife alleged to be mentally defective, to keep her in such restraint as to insure the public against injury by her. Counsel on both sides comment on the sparsity of authority upon the subject, and we have not succeeded in adding materially to the results of their research.

In the case of Hinski v. Stein, supra, Judge Head prefaces his opinion with the following observation:

"As a sound basis from which to rightly view the question involved, we may safely say it is at least anomalous that one adult human being should be held responsible for the tort of another. The general idea of right and wrong thus indicated is emphasized when the record affirmatively shows that the man punished by the verdict and judgment in the case before us, was not present when the wrong was done and had in no way aided or abetted, counselled or encouraged its commission."

It is true that in that case the husband was sued upon the common-law theory of the husband's responsibility created by the marital relation for the tort of a wife of normal mind, while here liability is claimed on the ground of the defendant's alleged custody of his mentally defective wife. But that custody is merely an inference drawn by the pleader from the marital relation, as is shown by the language of the fifth paragraph of the plaintiff's statement, which avers that the defendant, *"by reason of his having become the husband of the said Elsie Jefford,* had taken charge and assumed control of her". No actual custody or control is alleged, nor any contract, agreement, or rule of law requiring the defendant to assume such dominion over his wife. We feel therefore that the "sound basis" indicated by Judge Head in the foregoing quotation may be in this case a proper starting point.

The case of Emery v. Littlejohn et al., 83 Wash. 334, 145 Pac. 423, Ann. Cas. 1915D 767, is referred to by the learned counsel for the plaintiff as the leading authority upon the question here involved. Apparently, however, it has little application and is of little assistance. The facts of the case were that O. W. Pence, a man 30 years of age, had been committed to a hospital for the insane. He was released upon the application of his mother, Mrs. Littlejohn, upon her signing a "certificate" by which she agreed, inter alia, that she would "assume all responsibility for his actions while in my charge, and . . . care for him and return him to the hospital at my own expense if it becomes necessary." After his release, he left his mother's home and went to another city, where he got into controversy with Emery and wounded him with a pistol. Emery brought suit against the superintendent of the hospital, A. J. Littlejohn, the stepfather, and Mrs. Littlejohn, the mother of Pence. On appeal from a judgment in favor of the plaintiff against all three defendants, the Supreme Court of the State of Washington reversed the judgment. Judge Parker, by what seems to have been accepted as a majority opinion, though but two of the seven judges fully concurred, held that none of the defendants was liable, the superintendent because he had not abused his discretionary power in paroling Pence to his mother, the other two defendants because there was no evidence that Pence had shown a disposition to violence to put the parents on notice of danger in allowing him to be at large. A fourth judge agreed with the decision as to the superintendent and the stepfather but would have sustained the judgment against the mother because of her written agreement to assume responsibility for her son's conduct. Two others, while exculpating the superintendent, thought both the Littlejohns liable. The seventh judge would have affirmed the judgment against all three defendants. Judge Parker said (p. 351):

"We are not prepared to say that a private person having the legal custody and control of a violently insane person with homicidal tendencies could not, under any circumstances, be rendered liable for damages caused by such a person, resulting from want of proper restraint on the part of the person having him so in charge, yet no decision of a court involving even such an extreme case has been brought to our notice."

This is of course but a dictum, and what the court would have said if the question had been before it is a matter of conjecture. As the case stands, four of the seven judges concurred in a reversal of the judgment, although one of them felt that Mrs. Littlejohn was liable because of her written promise to the lawful custodian of the insane person to assume responsibility for him, a feature which we do not have in the present case. While it may plausibly be argued that these same judges would have affirmed the judgment had there been evidence of previous violence on the part of the insane man, they did not have such

a case before them, and Judge Parker remarked the lack of authority for such a decision. The case leaves us, therefore, to pursue an unblazed trail.

The plaintiff's brief quotes several excerpts from §319 of the American Law Institute's Restatement of the Law of Torts. It is there stated that the actor is required to anticipate and provide against misconduct of a third person under the following circumstances:

"One who voluntarily takes charge of a third person whom he knows or should know is likely to cause bodily harm to others if not controlled is under a duty so to exercise his control as to prevent the third person from doing such harm."

The following illustrations of this rule are given:

"1. A owns and operates a private hospital for contagious diseases. Through the negligence of the medical staff, B who is suffering from scarlet fever is permitted to leave the hospital with the assurance that he is entirely recovered although his disease is still in an infectious stage. Through the negligence of a guard employed by A, C, a delirious smallpox patient, is permitted to escape. B and C communicate the scarlet fever and smallpox to D and E respectively. A is liable to D and E.

"2. A operates a private sanitarium for the insane. Through the negligence of the guards employed by A, B, a homicidal maniac, is permitted to escape. B attacks and causes harm to C. A is liable to C."

Here A, presumably under contract and for a consideration, assumes a specific duty, with full knowledge of the responsibility it imposes on him, and neglects to perform it.

A significant portion of the restatement, not referred to in the plaintiff's brief, is §316, dealing with the duty of a parent to control the conduct of his child. Comment (b) under this section reads as follows:

"The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing. The parent is not under a duty so to discipline his child as to make it amenable to parental control when its exercise becomes necessary to the safety of others."

Our statutory law does not impose upon any particular person or class the duty of placing a demented person in an institution. The Mental Health Act of July 11, 1923, P. L. 998, sec. 303, provides:

"Any person who is mentally ill may be placed and detained in a hospital for mental diseases by order of the court of common pleas . . . upon a sworn or affirmed application *by any responsible person* addressed to said courts or judge". (Italics ours.)

The Acts of April 14, 1845, P. L. 440, sec. 14, April 22, 1863, P. L. 539, sec. 1, and April 22, 1863, P. L. 539, sec. 5, provide that commitments to State hospitals shall be made upon the application of "any person"; the Act of April 20, 1869, P. L. 78, sec. 6, upon application of "any respectable person". The Act of 1923, supra, sec. 404, provides:

"No patient who is known to be homicidal or otherwise dangerous to be at large shall be discharged without examination by, and the written consent of, the department, nor without a sufficient guarantee by the person [responsible?] for said patient's support and care that the safety of the public or any individual shall be safeguarded."

Similar provisions were contained in the Acts of April 8, 1861, P. L. 248, sec. 6, April 22, 1863, P. L. 539, sec. 10, and March 27, 1873, P. L. 54, sec. 5.

From these statutes quoted in part, we conclude it is the legislative intention that, when a deranged individual is placed in the custody of a State institution

at the instance of "any responsible person", he shall be kept in that institution until discharged as cured; or if released to the custody of a private individual, if he is known to be homicidal or otherwise dangerous, the person who receives him must give security for his good behavior. It is not until after he has been legally adjudged a lunatic and committed to a hospital that responsibility for his conduct begins. That responsibility rests with the hospital authorities, until it is transferred to and assumed by a private person in the manner provided by the act. We believe that the common law fixes no other or higher degree of responsibility upon the individual. The rule as quoted from the Restatement of the Law of Torts and the illustrations there supplied confirms us in the opinion. The case of Emery v. Littlejohn et al., supra, is not in conflict with it.

And now, September 26, 1934, the court being of the opinion that the plaintiff's statement discloses no cause of action against the defendant, the demurrer is sustained, and judgment is hereby entered for the defendant.