669 A.2d 360

T.A., Individually and B.A. and H.A., Minors,
by their guardian Meryl Kramer

v.

Eugene ALLEN and Elizabeth Ann
Allen, his wife, Debbie Allen.

Appeal of Elizabeth Ann ALLEN.

Superior Court of Pennsylvania.

Argued Feb. 22, 1995.

Filed Dec. 20, 1995.

Cathie J. Fagan, Pittsburgh, for appellant.

Dennis St. J. Mulvihill, Pittsburgh, for T.A., B.A. and H.A., appellees.

Before ROWLEY, President Judge, and CAVANAUGH, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA, FORD ELLIOTT and SAYLOR, JJ.

WIEAND, Judge.

Does a tenancy by the entireties of a residence create a special relationship which, under Restatement (Second) of Torts § 315, imposes a duty upon a wife to protect the husband's minor licensees against the husband's criminal or tortious conduct? The trial court held that a wife owed a duty of reasonable care to protect her husband's grandchildren (by a prior marriage) from sexual abuse by the children's grandfather, and a jury awarded damages against the wife for the husband's conduct. This is a difficult issue. After careful consideration, however, we reverse.

In February, 1989, Eugene Allen was convicted of offenses involving the sexual abuse of his three grandchildren: T.A., born June 17, 1973; B.A., born September 15, 1979; and H.A., born October 31, 1980. The offenses were committed in a residence in Wilkinsburg, Allegheny County, and a cottage in Crawford County, both of which were owned jointly by Allen and his second wife, Elizabeth Ann Allen.

The three grandchildren, by their natural mother, Debbie Allen, commenced a civil action against Eugene Allen and Elizabeth Ann Allen to recover damages for the abuse committed by Allen upon his grandchildren. The complaint charged Eugene Allen with counts of battery, intentional infliction of emotional distress and negligent infliction of emotional distress. The cause of action against Elizabeth Ann Allen was based on an alleged failure to exercise due care to protect the children against the misconduct of their grandfather. Eugene Allen also caused Debbie Allen, his daughter and the mother of the children, to be joined as an additional defendant.[1] The case was tried in September, 1992, after which the jury found in favor of the children. The jury apportioned liability as follows: Eugene Allen, eighty percent (80%); Debbie Allen, fifteen percent (15%); and Elizabeth Ann Allen, five percent (5%). The jury awarded compensatory damages in the amounts of $2,500,000 for H.A.; $1,800,000 for T.A.; and $800,000 for B.A. Punitive damages were awarded against Eugene Allen in the amount of $10,000,000 for each of the plaintiffs and against Elizabeth Ann Allen in the amount of $230,000 for each plaintiff.

Following announcement of the verdicts, the defendants filed post-trial motions seeking judgments notwithstanding the verdicts or, in the alternative, a new trial. The plaintiffs filed a motion for delay damages pursuant to Pa.R.C.P. 238. The trial court awarded delay damages and denied the motions of the defendants for post-trial relief. The verdicts were molded to reflect the award of delay damages, and judgments were

1. Guardians were appointed to represent B.A. and H.A., but T.A., who had attained the age of 18 by the time of trial, was permitted to proceed as a plaintiff in her own right.

entered thereon. From the entry of judgment, Elizabeth Ann Allen filed a timely appeal.[2] After argument before a three judge panel of the Superior Court, the appeal was certified for argument before the Court En Banc.[3]

"Our standard of review of an order denying judgment n.o.v. is limited: we must determine whether there was sufficient competent evidence to sustain the verdict." *Ludmer v. Nernberg*, 433 Pa.Super. 316, 321, 640 A.2d 939, 941 (1994). "In

2. In an unpublished memorandum decision, the Superior Court rejected an appeal by Eugene Allen and affirmed the judgment against him. See: *Allen v. Allen*, 441 Pa.Super. 663, 657 A.2d 45 (1994). There is no indication in the record that Debbie Allen ever filed an appeal from the judgment entered against her.

3. Because we agree with appellant that she was entitled to a judgment n.o.v., we find it unnecessary to address the remaining issues which she raised as follows:

2. Whether the lower court erred in permitting testimony and/or the introduction of other evidence of a third person's abuse on minors other than the plaintiff-appellees during plaintiff-appellees' case against a party other than the third person-abuser?

3. Whether the lower court erred in permitting testimony concerning evidence of criminal activity hidden or locked away by a third person and/or permitting the introduction of such evidence in the plaintiff-appellees' case against a party other than the third person abuser?

4. Whether the lower court erred in permitting testimony concerning a third person's diaries of criminal activity (e.g., the "criminal trial diaries") and the introduction of said third person's diaries in the plaintiff-appellees' case against a party other than the third person author without proper authentication?

5. Whether the lower court erred in permitting testimony and/or evidence regarding defendant-appellant's pre-marital relationship with a co-defendant while excluding testimony regarding defendant-appellant's childhood and personal family history?

6. Whether the lower court erred in denying the disclosure of a pre-sentence report prepared in the criminal trial of a co-defendant during the discovery phase and/or trial of the within civil action?

7. Whether the defendant-appellant may properly be held liable for punitive damages?

8. Whether the lower court erred in instructing the jury regarding the proper measure of damages applicable to the instant matter?

9. Whether the lower court erred in granting plaintiff-appellees' Motion to Add Damages for Delay for emotional injuries?

10. Whether the lower court erred in the manner in which it molded the compensatory damage award to include delay damages?

11. Whether the lower court erred in denying defendant-appellant's Motion to Disqualify plaintiffs' law firm from the representation of the plaintiffs?

reviewing a motion for judgment n.o.v., 'the evidence must be considered in the light most favorable to the verdict winner, and he [or she] must be given the benefit of every reasonable inference of fact arising therefrom; [ ] any conflict in the evidence must be resolved in his favor.' " *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992), quoting *Broxie v. Household Finance Co.,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). See also: *Scarborough v. Lewis,* 523 Pa. 30, 36, 565 A.2d 122, 124 (1989). "[J]udgment notwithstanding the verdict may be entered only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper." *Murray v. Philadelphia Asbestos Corp.,* 433 Pa.Super. 206, 212, 640 A.2d 446, 449 (1994). See also: *DiFrancesco v. Excam, Inc.,* 434 Pa.Super. 173, 177–178, 642 A.2d 529, 531 (1994); *Armstrong v. Paoli Memorial Hospital,* 430 Pa.Super. 36, 41–42, 633 A.2d 605, 608 (1993).

In order for liability to be imposed upon a defendant in a negligence action, the plaintiff must establish:

> the existence of a duty or obligation recognized by law; a failure on the part of the defendant to conform to that duty, or a breach thereof; a causal connection between the defendant's breach and the resulting injury; and actual loss or damage suffered by the complainant. *See Morena v. South Hills Health System,* 501 Pa. 634, 642 fn. 5, 462 A.2d 680, 684 fn. 5 (1983).

*Orner v. Mallick,* 515 Pa. 132, 135, 527 A.2d 521, 523 (1987). See also: *Burman v. Golay and Co., Inc.,* 420 Pa.Super. 209, 213, 616 A.2d 657, 659 (1992). " 'Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time.' " *Pittsburgh National Bank v. Perr,* 431 Pa.Super. 580, 584, 637 A.2d 334, 336 (1994) (emphasis deleted), quoting *Morena v. South Hills Health System,* 501 Pa. 634, 642, 462 A.2d 680, 684 (1983).

"Where there is no duty of care, there can be no negligence." *Maxwell v. Keas,* 433 Pa.Super. 70, 73, 639 A.2d 1215, 1217 (1994). See also: *Boyce v. United States Steel Corp.,* 446 Pa. 226, 230, 285 A.2d 459, 461 (1971); *Zanine v. Gallagher,*

345 Pa.Super. 119, 123, 497 A.2d 1332, 1334 (1985). In *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 523 Pa. 1, 564 A.2d 1244 (1989), the Supreme Court said:

> Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act; if no care is due, it is meaningless to assert that a person failed to act with due care. Certain relations between parties may give rise to such a duty. Although each person may be said to have a relationship with the world at large that creates a duty to act where his own conduct places others in peril, Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act.

*Id.* at 8, 564 A.2d at 1248. See: Restatement (Second) of Torts, § 314.

In this case, appellant did not cause injury to the grandchildren by her own, affirmative conduct. The allegation, rather, was that she had failed to protect her husband's grandchildren from pedophilic tendencies of her husband of which she knew or should have known. At Section 315 of the Restatement (Second) of Torts, the applicable rule of law is recited as follows:

### § 315. General Principle

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts, § 315. Therefore, "[a]s a general rule, a person is not liable for the criminal conduct of another in the absence of a special relationship imposing a pre-existing duty." *Elbasher v. Simco Sales Service of Penn-*

*sylvania,* 441 Pa.Super. 397, 398–400, 657 A.2d 983, 984 (1995), citing *Feld v. Merriam,* 506 Pa. 383, 392, 485 A.2d 742, 746 (1984).

Section 314A of the Restatement lists the following special relations which give rise to a duty to act affirmatively to protect another:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Our review of the record fails to disclose any special relationship between the grandchildren and appellant which would impose upon appellant a duty of exercising due care to protect the children from criminal abuse by their own grandfather. The children were not appellant's grandchildren; she happened to be married to their grandfather. When the minor plaintiffs visited their grandfather, they were his guests. They were not in appellant's custody, and there is no evidence that on such occasions appellant assumed any responsibility for or special relationship to the children. It is difficult under these circumstances to find any legal basis for imposing upon appellant an affirmative duty to protect the children. They were her husband's grandchildren, and they had come to visit their grandfather. Appellant "was not present when the wrong was done and had in no way aided or abetted, counselled or encouraged its commission." *Hinski v. Stein,* 68

Pa.Super. 441, 442 (1917). Cf. *Community Federal Savings & Loan Ass'n v. Luckenbach,* 436 Pa. 472, 476, 261 A.2d 327, 329 (1970) ("a husband is not responsible for the tortious acts of his wife committed outside his presence and without his actual or implied consent or direction.").

The court in this case held and charged the jury that appellant had a duty to protect minors who came upon entireties property from others on the premises who were known to present a danger to the minors. In so doing, the trial court

> failed to recognize the crucial distinction between the risk of injury from a physical defect in the property, and the risk from the criminal act of a third person. In the former situation the land[owner] has effectively perpetuated the risk of injury by refusing to correct a known and verifiable defect. On the other hand, the risk of injury from the criminal acts of third persons arises not from the conduct of the land[owner] but from the conduct of an unpredictable independent agent.

*Feld v. Merriam, supra* at 392, 485 A.2d at 746.

"The standard of care which a possessor of land owes to an entrant upon the land depends upon whether the entrant is a trespasser, licensee, or business invitee." *Trude v. Martin,* 442 Pa.Super. 614, 624, 660 A.2d 626, 630 (1995). See: *Carrender v. Fitterer,* 503 Pa. 178, 184, 469 A.2d 120, 123 (1983). These classifications have been explained as follows:

> The Restatement (Second) of Torts § 329 defines a trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *See also Oswald [v. Hausman ], supra,* 378 Pa.Super. 245, 253, 548 A.2d 594, 598 (1988). In contrast, a licensee is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." § 330 of the Restatement; *see also Oswald,* 378 Pa.Super. at 254, 548 A.2d at 599. Finally, an invitee is described as follows:
>
> > (1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land.

Restatement (Second) of Torts § 332. *Ott v. Unclaimed Freight Co.*, 395 Pa.Super. 483, 488, 577 A.2d 894, 896 (1990).

As to appellant, the grandchildren's status could only have been that of licensees. The record does not show an invitation by appellant to her husband's grandchildren. In fact, it was an invitation by the grandfather to which the children responded. Moreover and in any event, it is apparent they were not there to engage in business relations with appellant and, therefore, were not business invitees.

"Generally, a landowner owes to a mere licensee a duty to avoid injuring him through active negligence." 27 P.L.E., Negligence, § 43, at 73. Section 342 of the Restatement, which requires a possessor of land to warn his or her licensees of certain "*conditions on the land,*" does not have application to the risk of injury from criminal acts of third persons. See: *Feld v. Merriam, supra.* See also: Restatement (Second) of Torts, § 344, which imposes a duty upon a possessor of land, who holds it open to the public to enter for business purposes, to exercise reasonable care to protect or warn against "the accidental, negligent or intentionally harmful acts of third persons or animals." The Restatement does not impose upon a landowner a similar duty as to licensees. There is no special relationship between a possessor of land and a licensee which creates a duty upon the possessor of land to protect or warn licensees, whether adult or minor,[4] against criminal acts committed on the land by a third person.

4. "An owner or occupant of premises is under no higher duty of care and liability toward infant licensees than is imposed on him with respect to adult licensees." 27 P.L.E., Negligence, § 49, at p. 97.

The children in the instant case were the guests of their grandfather. Appellant did not acquire a duty to protect them from the grandfather's criminal misconduct merely because she was a tenant by the entireties with the grandfather, her husband, of the real estate on which the visits occurred. Indeed, to impose such a duty would be to place appellant in an untenable position between her husband and his grandchildren and impose upon her an impossible burden of insuring the safety of her husband's grandchildren during visits between grandfather and grandchildren.

We hold, therefore, that the decision in this case is controlled by the legal principle contained in Section 315 of the Restatement (Second) of Torts. Under this rule, there is no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another person unless a special relationship exists between the actor and the third person or the actor and the person injured. In this case, the minor plaintiffs failed to prove a special relationship that would create an exception to the general rule. Therefore, appellant had no duty to control her husband's conduct so as to protect the children whom he invited to visit and whom he surreptitiously abused. Appellant did not take on liability merely because she happened to be a co-owner of the building in which the criminal misconduct occurred.

Judgment reversed and entered n.o.v. in favor of appellant.

OLSZEWSKI, J., files a concurring and dissenting opinion in which TAMILIA, J., joins.

FORD ELLIOTT, J., files a dissenting opinion in which SAYLOR, J., joins.

OLSZEWSKI, Judge, concurring and dissenting.

Despite our agreement with the majority's determination regarding Elizabeth Allen's duty to protect, we would remand for a new trial on the issue of Elizabeth's duty to warn.

Eugene Allen sexually abused his three grandchildren, for which he will spend the rest of his life in prison. In this civil

suit, a jury also found that his acts of molestation constituted intentional torts so outrageous as to merit ten million dollars in punitive damages for each abused child. There can be no question that Eugene Allen's actions caused enormous damage, and he has been punished commensurately. The question in this appeal is whether his wife Elizabeth can also be held liable because she co-owns the property where the abuse occurred.

Elizabeth Ann Allen is not biologically related to the appellees; she is their step-grandmother. The appellees sued her in negligence, arguing that as co-owner of the property, she had a duty to protect them from dangers on the property— namely, their pedophilic grandfather. The evidence at trial showed that Elizabeth Allen knew or had reason to know of her husband's sexual tastes and practices. The evidence also showed that she averted her eyes to the abuse taking place in her home. Most decent members of society would no doubt agree that Elizabeth Allen had a moral obligation to do something to protect these children from their grandfather's acts of molestation.

Moral obligations, however, do not automatically give rise to legal liability. Our law imposes no general duty to rescue, for example. A duty to act ordinarily will not lie absent some special relationship between the party in danger and the party charged with liability. *See* Restatement (Second) of Torts, §§ 314–20. Here, the trial court allowed the jury to find Elizabeth Allen liable to her step-grandchildren solely because of her status as co-owner of the property where the abuse occurred. We believe that the trial court misstated the nature of her legal duties, and as a result she is entitled to a new trial.

It is still the law in this Commonwealth that "the standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 503 Pa. 178, 183–185, 469 A.2d 120, 123 (1983). Appellees concede that with respect to Elizabeth Allen, they were licensees. Appellees' brief at 19. Indeed, Elizabeth Allen never invited them

onto the property, nor was she even present when the acts of abuse occurred. R.R. 1039a, 1044–46a, 1172–73a, 1196a, 1273–74a, 1315a. At most, Allen merely knew of their presence on the property, and acquiesced.

The trial court instructed the jury that as a property owner, Elizabeth Allen had a duty to protect appellees from the criminal acts of third parties. Specifically, the court charged:

> ... With regard to the duty owed by a property owner—now, this would be pertinent in the case against Elizabeth Ann Allen—you should know the following:
>
> An owner of the premises, the property, has a duty to use reasonable care, reasonable care to eliminate any danger to minors who are on the premises with permission, or to protect said minors from any person the owner knows or should know poses a danger to the minors on the premises.

R.R. 1508a. We believe that this instruction correctly expresses the duties that a possessor of property owes to invitees, but not licensees. For gratuitous licensees like appellees, we think the most Elizabeth Allen could be legally required to do was to warn them of their potential peril.

## I.

It is a fair statement of the law that a landowner has a duty to make his premises safe for invitees, including a duty to protect invitees from the criminal or tortious conduct of third persons. *Murphy v. Penn Fruit Co.*, 274 Pa.Super. 427, 418 A.2d 480 (1980); Restatement (Second) of Torts, § 344. If Elizabeth Allen had been offering piano lessons in her home, then it would not have sufficed to merely warn her young students: "Watch out for my husband—he's a pedophile and might molest you." Rather, Allen would either have to make her home safe for her students, or find another place to teach lessons.

Liability for the acts of third parties extends only to invitees, however. There is no general rule which holds landowners liable to licensees for the criminal or tortious acts of third parties. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984).

A landowner may well be liable to licensees for dangerous "conditions on the land." *See id.;* Restatement (Second) of Torts, § 342. Indeed, for certain dangerous conditions, liability will extend even to trespassing children. *Id.* at § 343B (the attractive nuisance doctrine). In the context of a landlord's liability to his tenants, our Supreme Court in *Feld* thoughtfully distinguished between conditions on the land and acts of third parties:

> The threshold question is whether a landlord has any duty to protect tenants from the foreseeable criminal acts of third persons, and if so, under what circumstances. Well settled law holds landlords to a duty to protect tenants from injury. rising out of their negligent failure to maintain their premises in a safe condition. . . . The criminal acts of a third person belong to a different category and can bear no analogy to the unfixed radiator, unlighted steps, falling ceiling, or the other myriad possibilities of one's personal negligence. To render one liable for the deliberate criminal acts of unknown third persons can only be a judicial rule for given limited circumstances.

*Feld,* 506 Pa. at 390, 485 A.2d at 745 (citations omitted). Our high court went on to reaffirm its adoption of section 344 of the Restatement, that landowners can be liable to invitees for the criminal or tortious acts of third parties, but not to licensees. *Id.*

Since her step-grandchildren were licensees, Elizabeth Allen had no duty to protect them from the independent tortious acts of her husband. Nor was her husband a "condition on the land" which could trigger a duty to protect or warn the minor-appellees, regardless of their entry status. As the trial court noted, other jurisdictions have seen fit to erase the distinction between invitees and licensees, *e.g. Anaya v. Turk,* 151 Cal.App.3d 1092, 199 Cal.Rptr. 187 (1984), or between third parties and conditions on the land, *e.g. Jobe v. Smith,* 159 Ariz. 36, 764 P.2d 771 (1988); trial court opinion, 2/28/94 at 33. So far, our high court has not followed suit. Until it does, we are bound to observe these well-established distinctions.

Moreover, we believe there is still good reason for maintaining these distinctions. When one considers how Elizabeth Allen might attempt to discharge a duty to protect the appellees, the wisdom of the invitee/licensee distinction becomes apparent. Elizabeth Allen could not call the sheriff to eject her husband because Eugene Allen co-owned the property. Nor could she necessarily assert any control over her husband's activities. *Cf.* Restatement (Second) of Torts, § 318 (possessor of land may have a duty to control licensees, and prevent them from harming others). Nor could Elizabeth prevent the appellees from accepting their grandfather's invitations to visit. As co-owner, Eugene had every right to invite appellees onto the property, and Elizabeth had no lawful power to exclude them. *See, e.g., McGowan v. Bailey,* 179 Pa. 470, 36 A. 325 (1897); 14 P.L.E. § 45.

If a business owner cannot insure the safety of her patrons, she has the option of closing up shop and moving to a new location. A landowner can simply stop inviting the public onto dangerous property, and thus avoid having to insure invitees against the potential torts of third parties. Imposing a duty to protect licensees upon a landowner who lacks the power to do so would effectively make the landowner an involuntary insurer of the licensees' safety. The law cannot reasonably demand that a landowner protect the safety of people whom she cannot exclude, against dangers she cannot eliminate. Yet that is precisely the duty which the trial court's instruction imposed on Elizabeth Allen.

## II.

Appellees also argue that Elizabeth Allen owed them a duty of care by virtue of a special relationship, but nowhere state precisely what this relationship is. The sum of appellees' argument is that they were children, while Allen was an adult with knowledge of the peril posed by their grandfather. Appellees' brief at 27.

The question of when one has a duty to protect others is discussed in the Restatement (Second) of Torts, §§ 314–20.

Appellees were not related to Elizabeth Allen, were never in her custody, and she never assumed any responsibility towards their protection. Appellees do not cite, nor are we aware of any Pennsylvania caselaw which recognizes a special relationship between adults and children generally, such that an adult with knowledge of a particular danger must act to protect any child subject to that danger.

The Restatement, however, does not speak kindly of the rule that people have no obligation to help others, absent a special relationship:

> The result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown. Such decisions have been condemned by legal writers as revolting to any moral sense, but thus far they remain the law. It appears inevitable that, sooner or later, such extreme cases of morally outrageous and indefensible conduct will arise that there will be further inroads upon the older rule.

Restatement (Second) of Torts, § 314 comment c. We believe that this is such a case.

The concept of duty is constantly evolving. Our high court has recognized that duties are not entirely constrained by prior caselaw, but may respond to current policy considerations:

> In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered. To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times. The late Dean Prosser expressed this view as follows:
>
> > These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be

liability; it necessarily begs the essential question.... In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

*Gardner by Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 454–55, 573 A.2d 1016, 1020 (1990) (quoting *Sinn v. Burd,* 486 Pa. 146, 164, 404 A.2d 672, 681 (1979)).

Just because there is no Pennsylvania precedent for imposing any duty upon Elizabeth Allen does not mean that this must be the rule in this case. The facts of this case strongly implicate "our ideas of morals and justice" and "the mores of the community." Appellees, while mere licensees, were children. They were particularly ill-equipped to recognize and deal with the danger posed by their grandfather. The bizarre details of Eugene Allen's pedophilic practices which came out at trial demonstrate the exceptional magnitude of this danger. Also, Elizabeth Allen had first-hand knowledge of her husband's pedophilic practices. These weighty factors must coalesce into some kind of duty.

While we believe that our law cannot and should not impose upon Elizabeth Allen the unworkable duty of protecting her step-grandchildren, we think the law can and should impose a duty to warn them of their grandfather's known propensity for sexually abusing children. *Accord Pamela L. v. Farmer,* 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (1980) (where wife knew that her husband was a sex offender and was inviting minors home while she was at work, wife had a duty to warn minor licensees of the danger).

## III.

The trial court went further, however, and instructed the jury that Elizabeth Allen had a duty to protect her step-

grandchildren. As we have set forth, such a duty goes too far. It was error to instruct the jury that Elizabeth Allen was legally required to do something which she was not legally empowered to do, and which sound rules of well-established law do not countenance. The most the trial court should have charged is that Elizabeth Allen had a duty to warn her step-grandchildren or their mother of the danger posed by their grandfather.

Nor can we consider the court's instruction harmless error. On the basis of the court's erroneous instruction, the jury apportioned the negligence 80% to Eugene Allen, 15% to Deborah Allen (the appellees' mother), and only 5% to Elizabeth Allen. R.R. 1508a. Despite being told that Elizabeth Allen had a duty to protect the appellees, the jury still found their mother Deborah to be more culpable than Elizabeth. Had the jury been properly instructed that Elizabeth only had a duty to warn Deborah Allen and her children of Eugene's pedophilia, it may have found her less culpable yet, or even entirely blameless. Accordingly, we would vacate the judgment against Elizabeth Allen and remand for a new trial.

TAMILIA, J., joins.

FORD ELLIOTT, Judge, dissenting.

Having carefully reviewed both the majority opinion of my colleague Judge Wieand and the concurring and dissenting opinion of my colleague Judge Olszewski, I find that I must respectfully dissent as to both. I would affirm the order of the trial court denying appellant Elizabeth Ann Allen's motions for post-trial relief. My reasons follow.

As do my colleagues, I recognize that Pennsylvania still adheres to the view that " '[t]he standard of care which a possessor of land owes to an entrant upon the land depends upon whether the entrant is a trespasser, licensee, or business invitee.' " (Majority opinion at 309, quoting Trude v. Martin, 442 Pa.Super. 614, 624, 660 A.2d 626, 630 (1995).) I also agree with my colleagues that the children in the instant case were licensees. (Majority opinion at 308–309.) Additionally, I do

not take issue with my colleagues' statement of the duty generally owed by a possessor of land to a licensee. (*Id.* at 310, *citing* § 342 of the Restatement of the Law (Second) of Torts (possessor of land has a duty to exercise reasonable care to make a condition upon the land safe or to warn the licensee of the condition and the risk involved where the possessor of land knows or has reason to know of the condition and should realize it involves an unreasonable risk of harm to such licensees, and should also expect that the licensees will not discover or realize the danger).) It is at this point in the analysis, however, that I must part company with my colleagues, for different reasons.

The majority finds that the children were licensees, that appellant's husband was not a condition on the land, and that, therefore, appellant had no duty as a possessor of land to protect the children from her husband. (Majority opinion at 310.) The majority then finds no "special relationship," as that term is defined in the Restatement, between appellant and the children that would impose upon appellant a duty to control the conduct of third persons who might harm the children. (*Id.* at 311, *citing* Restatement (Second) of Torts § 315 (1965) and sections referred to therein.) Having thus found no duty as a possessor of land, and no special relationship that imposes a duty, the majority finds no duty at all.

The concurring and dissenting opinion of Judge Olszewski, on the other hand, would find a duty based upon appellant's status as a possessor of land, but would limit that duty to a duty at most to warn the children licensees of the danger posed by their grandfather. (Concurring and dissenting opinion at 312–313.) Judge Olszewski recognizes, however, that licensees are only protected from conditions upon the land. In addition, Judge Olszewski acknowledges that Pennsylvania has yet to find a special relationship between adults and children, generally, that would impose upon adults with knowledge of a particular danger to children a duty to act to protect a child subject to that danger. (*Id.* at 314–317.) Nevertheless, Judge Olszewski, recognizing the "shifting sands" upon which the law imposes a duty of care, is willing to find, from the children's

status as children, from "our ideas of morals and justice," and from "the mores of the community," a duty on the part of appellant to warn the children of the danger posed by their grandfather. (*Id.* at 316–317, *quoting Gardner by Gardner v. Consolidated Rail Corp.,* 524 Pa. 445, 454–55, 573 A.2d 1016, 1020 (1990) (other citations omitted).)

I agree with Judge Olszewski that:

[T]he concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered. To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times.

Concurring and dissenting opinion at 316, *quoting Gardner, supra* at 454–55, 573 A.2d at 1020 (other citations omitted). As a result, I would agree with him that appellant had a duty to warn; however, I would find that duty encompassed within a broader duty to protect, for the following reasons.

Pennsylvania has adopted the so-called "attractive nuisance" or "child trespasser" doctrine, which states:

### § 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger *or otherwise to protect the children.*

Restatement (Second) of Torts § 339 (1965) (emphasis added).[1] *See Carter by Carter v. United States Steel Corp.,* 390 Pa.Super. 265, 276–77, 568 A.2d 646, 651 (1990) (noting that the Pennsylvania Supreme Court adopted § 339 in *Bartleson v. Glen Alden Coal Co.,* 361 Pa. 519, 64 A.2d 846 (1949)), *affirmed in part, reversed in part on other grounds,* 529 Pa. 409, 604 A.2d 1010 (1992), *cert. denied sub nom. U.S. Steel v. Carter,* 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 130 (1992). It is thus clear that Pennsylvania, as well as almost every other jurisdiction, recognizes a distinction between children who enter upon the land, even as trespassers, and adults who do likewise. The possessor of land who knows that children are likely to trespass on his or her land, and who also knows of an artificial condition on the land that poses a threat of serious bodily injury or death, owes the children the same duty he or she would owe an invitee; namely, a duty to protect. *See* § 343(c), Restatement (Second) of Torts (1965). *See also* § 369 (possessor of land is subject to liability for physical harm caused to children by an artificial condition maintained by him on the land so close to the highway that it involves an unreasonable risk to such children because of their tendency to deviate from the highway).

The reason for our heightened protection of children is grounded in the public policy that society should protect those who are too young, too innocent, or too defenseless to protect themselves. As a result, we recognize that a sign posted beside a swimming pool would do little to deter a young trespassing child, even if he or she could read, from jumping in on a hot day. Throughout the law, there exists this heightened protection afforded to children. We grant immu-

1. Section 343B recognizes that situations in which a possessor of land is subject to liability to children as trespassers also subjects the possessor of land to liability to children who are licensees and invitees.

nity from criminal or civil liability to those who make a good-faith report of suspected child abuse, 23 Pa.C.S. § 6318(a), and we presume good faith. 23 Pa.C.S. § 6318(b). Physicians, nurses, teachers, day-care workers, and others who encounter suspected instances of child abuse in the course of their employment are required by law to report these instances to child protective agencies, and may face summary or misdemeanor charges for the willful failure to comply. 23 Pa.C.S. §§ 6311, 6319. We impose upon social hosts civil liability for the consequences of serving alcoholic beverages to minors. *Congini by Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983). We also impose criminal accomplice liability upon adults who obtain alcoholic beverages for minors. 18 Pa.C.S.A. §§ 306, 6308. *See generally* 18 Pa.C.S.A. §§ 6301–6314 (minors). As a society, we do all of this in recognition of the fact that children are usually not able to appreciate the risk inherent in their actions, and that even warnings are inadequate to protect those who are too immature or too innocent to understand the danger.

The majority argues that finding a duty on the part of appellant to protect children coming onto her property from the harmful acts of third parties is precluded by our supreme court's decision in *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). With all due respect to the majority, I must disagree. In *Feld*, a couple was abducted and brutally assaulted by an unknown assailant in the parking garage of the large apartment complex in which they resided. In refusing to extend to the apartment complex owners a duty to protect tenants from the criminal acts of unknown third parties, the supreme court stated:

> The criminal acts of a third person belong to a different category and can bear no analogy to the unfixed radiator, unlighted steps, falling ceiling, or the other myriad possibilities of one's personal negligence. To render one liable for the deliberate criminal acts of *unknown third persons* can only be a judicial rule for given limited circumstances.

*Feld, supra* at 390, 485 A.2d at 745 (emphasis added). The *Feld* court continued:

The Superior Court viewed the imposition of this new duty [to protect against harmful acts of third persons] as merely an extension of the landlord's existing duty to maintain the common areas to be free from the risk of harm caused by physical defects. However, in so holding that court failed to recognize the crucial distinction between the risk of injury from a physical defect in the property, and the risk from the criminal acts of a third person. *In the former situation the landlord has effectively perpetuated the risk of injury by refusing to correct a known and verifiable defect. On the other hand, the risk of injury from the criminal acts of third persons arises not from the conduct of the landlord but from the conduct of an unpredictable independent agent.* To impose a general duty in the latter could effectively require landlords to be insurers of their tenants [sic] safety; a burden which could never be completely met given the unfortunate realities of modern society.

*Id.* at 392, 485 A.2d at 746 (emphasis added). Clearly, the facts of the instant case are distinguishable. Under *Feld,* I could not impose upon appellant a duty to protect children from the unpredictable acts of unknown third parties; rather, I would impose upon her a duty to protect them from the predictable acts of known third parties, because she effectively perpetuated the risk of injury by refusing to respond to a known and verifiable risk to the children. As in Judge Olszewski's example, just as appellant would owe a duty to protect the child who comes to her home for piano lessons, as a business invitee, from her husband's known abuse, so too should appellant owe the same duty to protect the child who comes to her home as a licensee merely to practice on her piano. Similarly, the child who comes to one's home as an invitee to purchase home-made candy should receive no more protection from the known propensity of a person on the premises to contaminate the candy than would the child who comes to one's home as a licensee to trick-or-treat on Halloween. To require anything less is to countenance an absurd result.

Nor is there a valid public policy consideration behind refusing to impose a duty on appellant in the instant case, as there was in *Feld*. The *Feld* court was properly concerned with making apartment complex owners insurers of their tenants' safety in a world in which "[t]he criminal can be expected anywhere, any time, and has been a risk of life for a long time." *Feld, supra* at 391, 485 A.2d at 746. Recognizing that providing such "insurance" would dramatically increase the costs of owning apartment complexes, and that these costs would inevitably be passed along to tenants, the *Feld* court wisely decided it could not impose such a duty. Instantly, however, the cost of protecting the children from a known child abuser could amount to nothing more than the cost of a telephone call—to the parents, the police, or the local child protection service.

While no one section of the Restatement, and no Pennsylvania case, directly imposes upon possessors of land a heightened duty toward children to protect them from the harmful acts of known third persons regardless of their status as trespassers, licensees or invitees, several sections recognize such a duty where a special relationship exists between the possessor of land and the person coming on the land. *See* Restatement (Second) of Torts §§ 315, 314A, & 320 (1965), *cited with approval in Maxwell v. Keas*, 433 Pa.Super. 70, 639 A.2d 1215 (1994); *Troxel v. A.I. duPont Institute*, 431 Pa.Super. 464, 636 A.2d 1179 (1994); *Johnson v. Johnson*, 410 Pa.Super. 631, 644, 600 A.2d 965, 971–72 (1991); *Stupka v. Peoples Cab Co.*, 437 Pa. 509, 264 A.2d 373 (1970). Section 314A(3), for example, recognizes a special relationship between a possessor of land who holds it open to the public and members of the public who enter in response to his invitation, even where their presence on the land is not in furtherance of any pecuniary interest of the possessor of land. *See* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 61, at 421–424 (5th ed. 1984). As a result, such a possessor of land would have a duty to protect those coming onto his land by invitation from the harmful acts of third persons. *See* § 315. Section 344 imposes upon a possessor of land who holds it

open to the public for entry for his business purposes a duty to protect those members of the public on his land from the accidental, negligent or intentionally harmful acts of third persons or animals. *See Johnson v. City of Philadelphia,* 657 A.2d 87 (Pa.Cmwlth.1995) (citing § 344 with approval but holding that plaintiff must still show that alleged negligent conduct falls within an exception to immunity provided state employees). Section 509 imposes absolute liability on a dog owner who is aware of the animal's vicious propensities, and whose dog injures a person coming on the land, regardless of the status of the person. While this section has not been adopted in Pennsylvania, our supreme court has adopted the theory that a dog owner is liable for negligently failing to control or restrain a dog when he knows of the dog's vicious propensities. *Andrews v. Smith,* 324 Pa. 455, 188 A. 146 (1936). *Accord Deardorff v. Burger,* 414 Pa.Super. 45, 606 A.2d 489 (1992), *allocatur denied sub nom. Deardorff v. Miller,* 532 Pa. 655, 615 A.2d 1312 (1992).

The only instances in which the Restatement addresses the duty of landowners to children specifically occur in § 339, set forth *supra,* and in § 369. It is instructive that in both instances, the Restatement abandons the distinctions among trespassers, licensees, and invitees as they pertain to children who come onto the land and are harmed by an artificial condition upon the land. *See* § 343B. I would find guidance from these sections, and hold that the distinction also blurs, *with regard to children* who are harmed by a known third person with known "vicious propensities." To extend such protection merely acknowledges that which the law of Pennsylvania has already acknowledged; that children are, by their very nature, in need of greater protection than adults. Such a result also enables us to avoid the anomaly of imposing a duty upon one such as appellant to protect a child who comes onto her property from drowning in her swimming pool, while imposing no duty to protect a child who comes onto her property from the known harmful acts of a known third person. *See Pamela L. v. Farmer,* 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (1980).

Both the majority and the concurrence and dissent make much of the fact that appellant may have been unable to keep the children from coming onto her property since they were her husband's grandchildren, and he co-owned the property. *See* majority opinion at 311 ("Indeed, to impose such a duty would be to place appellant in an untenable position between her husband and his grandchildren and impose upon her an impossible burden of insuring the safety of her husband's grandchildren during visits between grandfather and grand-children"); concurring and dissenting opinion, Olszewski, J. at 315 ("The law cannot reasonably demand that a landowner protect the safety of people whom she cannot exclude, against dangers she cannot eliminate."). First, I note that the law imposes just such a duty in the case of child trespassers; namely, a duty to protect these children, who by definition cannot effectively be excluded, from a danger that cannot be eliminated. *See* § 339 of the Restatement (Second) of Torts, set forth *supra*. More importantly, however, the issues raised by my colleagues are not issues that go to appellant's *duty* toward the children; rather, these are issues that go to the *reasonableness* of appellant's efforts to protect the children, and are therefore properly questions for the jury. The duty imposed should be a duty to eliminate the danger or otherwise to protect, where protection subsumes warning an appropriate adult if a warning would be adequate to protect the child. In the instant case, whether merely warning the children's mother of their grandfather's abusive practices would have sufficed to meet this duty is not an issue before us, because appellant has never argued that she tried, but failed, to warn or otherwise to protect. Rather, she has argued only that she owed no duty whatsoever to these children, related by marriage, who came to her door, entered her home, and therein were systematically abused by a man who appellant knew kept a studio devoted to sexual experiments on young children. I do not believe that "our ideas of morals and justice" allow of such a result.

As a result of the foregoing, I would find that the trial court's instruction to the jury on the issue of duty, which

charged that appellant had a duty to eliminate the danger or to protect the children, accurately reflected the appropriate duty of a possessor of land to any child coming onto his or her property. While the trial court did not specifically mention a duty to warn, which duty is subsumed by the duty to protect, I would find such an omission harmless in view of the total lack of evidence that any warning was given, either to the children or to an appropriate adult.

As Judge Olszewski observed, the late Dean Prosser described the concept of duty as one built upon shifting sands: "There is a duty if the court says there is a duty ... Duty is only a word with which we state our conclusion that there is or is not to be liability...." Concurring and dissenting opinion, Olszewski, J. at 316–317, *quoting Gardner, supra* at 454–55, 573 A.2d at 1020 (other citations omitted). To the extent that the law does not yet impose a duty upon a possessor of land such as appellant to protect children from the known harmful acts of known third persons, I would seize this opportunity to do so, and would affirm.

SAYLOR, J., joins.