T.A., Individually and B.A. and H.A., Minors by Their Guardian Merle S. Kramer, Appellants,

v.

Eugene R. ALLEN and Elizabeth Ann Allen, His Wife,

v.

Debbie Allen

v.

General Accident Insurance Company of America, National City Bank of Pennsylvania and PNC Bank.

General Accident Insurance Company of America

v.

Eugene R. Allen, Elizabeth Allen, T.A., B.A., H.A. and Merle S. Kramer, Guardian Ad Litem for B.A. and H.A., Minors.

Superior Court of Pennsylvania.

Argued Oct. 27, 2004.

Filed Feb. 8, 2005.

Dennis St. J. Mulvihill, Pittsburgh, for appellants.

Ronald F. O'Brien, Jr., Philadelphia, for General Accident, appellee.

BEFORE: PANELLA, POPOVICH and JOHNSON, JJ.

OPINION BY POPOVICH, J.:

¶ 1 At 327 WDA 2004, Appellant T.A., individually, and Appellants B.A. and H.A.,[1] through their guardian *ad litem,* appeal the entry of summary judgment in favor of Appellee General Accident Insurance Company of America, entered on January 28, 2004, in the Court of Common Pleas of Allegheny County. At 407 WDA 2004, Cross–Appellant General Accident Insurance Company of America appeals the order entered September 3, 2003, that ordered Cross–Appellees' bad faith claims to proceed to a jury trial.[2] At 327 WDA

---

1. Consonant with our usual practice in cases involving allegations of the sexual abuse of children, we have abbreviated the names of the victims.

2. On April 19, 2004, this Court ordered that the appeals at 327 WDA 2004 and 407 WDA 2004 be listed consecutively before this panel

2004, we affirm the trial court's entry of summary judgment. At 407 WDA 2004, we dismiss the appeal as moot.

¶ 2 The relevant facts and procedural history of this case are set forth fully in the trial court's opinion of January 28, 2004, as follows:

In February 1989, Eugene R. Allen [ (the deceased) ] was convicted of criminal offenses involving the sexual abuse of [Appellants,] his grandchildren, who were born in 1973, 1979, and 1980. The offenses were committed between 1986 and 1988 in a residence in Wilkinsburg and a cottage in Crawford County owned by [the deceased] and his Wife, Elizabeth Ann Allen [ (Grandmother) ].

In these proceedings [docketed at] GD89–13380, [Appellants] commenced an action against both grandparents. The claims against [Grandmother] were based on her alleged failure to exercise due care to protect [Appellants] from the misconduct of [the deceased]. ( [the deceased] named [Appellants'] mother as an additional defendant).

On September 1992, a jury entered a verdict in favor of [Appellants] against [the deceased, Grandmother, and Appellants' mother]. The jury awarded compensatory damages [to each Appellant; the aggregate compensatory damage award was $5.1 million dollars]. Punitive damages were awarded against [the deceased] in the amount of $10 million for each [Appellant] and against [Grandmother] in the amount of $230,000.00 for each [Appellant].

[The deceased and Grandmother filed separate appeals to this Court]. In an unpublished memorandum [filed] November 28, 1994, [this Court affirmed the trial court's judgment]. [*Allen v. Allen*, [441 Pa.Super. 663,] 657 A.2d 45

(Pa.Super. filed 11/28/1994) (unpublished memorandum), *allocatur denied,* 544 Pa. 641, 664 A.2d 971 (1995) ]. [The deceased's] application for writ of *certiorari* to the United States Supreme Court was denied on January 16, 1996. *Allen v. Allen,* 516 U.S. 1074[, 116 S.Ct. 777, 133 L.Ed.2d] 729 (1996).

[In *T.A. v. Allen*, [447 Pa.Super. 302,] 669 A.2d 360 (Pa.Super.1995), *allocatur denied,* 544 Pa. 661, 676 A.2d 1201 (1996), this Court reversed the judgment of the trial court against Grandmother] and entered judgment n.o.v. in her favor.

### DECLARATORY JUDGMENT PROCEEDINGS AT GD90–14002

[Appellee] issued homeowners' insurance policies for three consecutive years beginning December 3, 1985, to [the deceased and Grandmother as husband and wife]. The policies contained language specifically excluding claims for bodily injury which are expected or intended by the insured. [Appellee] undertook the legal defense of the civil action at GD89–13380, subject to a reservation of rights.

On August 15, 1990, [Appellee] filed [a declaratory judgment action at GD90–14002] seeking a determination of its duties under the [homeowners' policy]. [Appellee named as defendants on the complaint the deceased, Grandmother, and Appellants.] [Appellee] sought a declaration that it had no duty to defend [or] indemnify either [the deceased or Grandmother]. On December 1, 1992, [Appellants] filed an amended answer and new matter to [Appellee's] complaint[. The deceased did not respond to Appellee's complaint].

for the purposes of argument. Therefore, we will dispose of the appeals jointly.

[Both Appellants and Appellee] filed motions for summary judgment on the issues raised in [Appellee's] complaint[.] On August 15, 1994, [the trial court] partially granted the summary judgment motions of [the parties].

In *General Accident Insurance Co. of America v. Allen,* 708 A.2d 828 (Pa.Super.1998), [this Court held] that [the deceased's conduct] was of an intentional nature. Consequently, [Appellee] did not have any duty to defend [the deceased]. However, [because Grandmother's] behavior was not of an intentional nature, [this Court held] that [Appellee] had a duty to defend [Grandmother].

Neither the [trial court] nor [this Court] considered the claims which [Appellants] raised in their amended new matter filed in [the proceedings at GD90–14002]. This new matter, filed only on behalf of [Appellants], raise[d] statutory and contractual bad faith claims arising out of [Appellee's] conduct during the settlement negotiations and involving [Appellee's] strategies. On December 22, 1992, [Appellee] filed preliminary objections to the amended new matter. The defenses raised to the new matter [included] the failure of [Appellants] to state a cause of action[. Appellee asserted] that [Appellants] [could not] bring statutory or contractual bad faith claims against [Appellee] because they [were] not parties to the insurance agreement.

On December 23, 1992, [the trial court] entered an order which severed and stayed all claims for bad faith for purposes of the trial [on] the declaratory judgment action, subject to the right of counsel to request the lifting of the stay should a change of circumstances [warrant such an action]. The stay [entered by the trial court] was lifted on May 22, 2002.

## GARNISHMENT PROCEEDINGS AT GD89–13380

On April 2, 1997, in the proceedings at GD89–13380, [Appellants] commenced a garnishment action against [Appellee] by filing a praecipe for a writ of execution. These garnishment proceedings, [that seek] an amount in excess of $46 million [dollars], are based on the claim that [the deceased] owes a debt to [Appellants] and that [Appellee] holds money which it owes to [the deceased] because it breached its contractual and statutory obligations of good faith.

On June 6, 1997, [Appellee] filed preliminary objections to the garnishment interrogatories. These preliminary objections include[d] the defense that a judgment creditor cannot bring a bad faith action against a judgment debtor's insurance company because the insurance company does not have any obligations to the judgment creditor in the absence of [a] contractual relationship. On September 4, 1997, [the trial court] overruled the preliminary objections and, pursuant to an agreement of the parties, stayed the garnishment proceedings until resolution of the declaratory judgment action in [this Court]. Subsequently, the parties stipulated that the May 22, 2002 court order lifting the stay in the declaratory judgment action also applied to the [garnishment] proceedings.

## APRIL 4, 2002 ASSIGNMENT

\* \* \*

At the time [Appellants] filed their amended answer and new matter to [Appellee's] declaratory judgment action at GD90–14002, Appellants] did not plead that [the deceased] had executed [to

them] an assignment [of] his rights [to sue Appellee for statutory and contractual bad faith]. Furthermore, they could not do so, because, at the time the garnishment action was commenced on April 2, 1997, [the deceased] had never assigned any bad faith claims that he [may have] had against [Appellees] to [Appellants]. According to [Appellants,] their counsel sent a letter to [the deceased] requesting an assignment of his rights. [The deceased] wrote back [and stated] that he could not sign the assignment.

[The deceased] died on August 25, 1999. An estate was opened for him. On April 4, 2002, [Appellants] obtained assignments of rights from the Administratrix of [the deceased's estate], [these assignments included] all rights that the estate may have [had] against [Appellees] arising out of the 1989 litigation and insurance claims associated with the incidents [that] are the subject of this litigation.

Trial court memorandum, 1/28/2004, at 1–7 (footnotes omitted).

¶ 3 Appellee filed a motion to consolidate the cases at GD89–13380 and GD90–14002, and, on November 25 2002, the trial court consolidated the cases. The consolidated cases continued through discovery and pre-trial pleadings, and, on September 28, 2003, Appellee filed a motion for summary judgment based on the statute of limitations. The trial court entered summary judgment in Appellee's favor on January 28, 2004, and dismissed the cases against Appellee at GD89–13380 and GD90–14002.[3]

¶ 4 Appellants filed a timely notice of appeal from the trial court's order. The trial court did not order Appellants to file a concise statement of matters complained of on appeal, and it did not author a second memorandum in this case.

¶ 5 Appellants present the following issues for our review:

1. Whether a third party claimant must have an express assignment from the insured tortfeasor to bring a bad faith action against the tortfeasor's insurer where there has been an excess verdict rendered against the insured tortfeasor?

2. Whether [Appellants'] bad faith claims are barred by the statute of limitations where they did not need an express assignment when they first asserted their bad faith claims against [Appellee]?

3. Whether [Appellants'] bad faith claims based on an express assignment from the [e]state of [the deceased] constitute new causes of action so that any amendment to the pleadings to assert these claims would not relate back to the original pleadings?

Appellants' brief, at 4.[4]

¶ 6 At the outset, we note that our review of appeals from the entry of summary judgment is governed by the following standard:

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We apply the same standard of review as the trial court in that we view the record

---

3. In its disposition of Appellee's summary judgment motion, the trial court also ruled on the preliminary objections filed by Appellee to the declaratory judgment action and Appellants' new matter filed in the declaratory judgment action.

4. We have reorganized Appellants' issues.

in the light most favorable to the party opposing the motion and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*Curry v. Huron Ins. Co., Inc.*, 781 A.2d 1255, 1257 (Pa.Super.2001) (citations omitted).

¶ 7 We begin with the observation that an insurance company is liable in the form of a judgment in excess of policy limits where the insurance company's negligence in investigating a claim or unreasonable refusal of an offer of settlement results in damages to the insured. *See Cowden v. Aetna Cas. and Sur. Co.*, 389 Pa. 459, 134 A.2d 223 (1957). This cause of action for "bad faith" on the part of the insurance company is assignable by the insured to third parties. *Brown v. Candelora*, 708 A.2d 104, 107 (Pa.Super.1998) (third party may, through written assignment, stand in shoes of insured and bad faith claim against insurance company in place of insured).

¶ 8 Conversely, we held in *Brown v. Candelora*, 708 A.2d at 107–108, that a judgment-creditor of an insured may not, absent a written assignment of rights from the insured, pursue a "bad faith" suit *via* a garnishment action against an insurer who refuses to indemnify an insured in order to obtain a judgment award in excess of the insured's policy limits. Rather, a judgment-creditor in a garnishment action may attach only the liquidated "property" held by the insurer for the insured, *i.e.*, the applicable limits of the coverages provided by the policy insuring against the loss. *Id.*, 708 A.2d at 108. This is because only those debts that are certain and not subject to a contingency are attachable in a garnishment proceeding. *Id.*, 708 A.2d at 108. An unliquidated claim for "bad faith" against an insurance company is "property subject to a contingency" and, therefore, is not attachable in garnishment proceedings. *Id.*, 708 A.2d at 108, 112–13.

¶ 9 Appellants argue that the aforementioned holding of *Brown* should not apply to this case because, at the time their suit was instituted, *Brown* had not been decided. This argument fails. A ruling announcing a new rule of law will apply to the case in which it is announced and to all pending cases. *Davis v. Gov. Employees Ins. Co.*, 775 A.2d 871, 874–75 (Pa.Super.2001). However, the retroactive application of a decision announcing a new rule of law is discretionary with the trial court. *Blackwell v. State Ethics Comm'n*, 527 Pa. 172, 183, 589 A.2d 1094, 1099 (1991).

¶ 10 A review of the record indicates that Appellants initiated their garnishment action on April 2, 1997, and it was stayed until May 22, 2002. *Brown* was decided on January 30, 1998. Thus, its application to the garnishment action is not "retroactive" because the case was pending at the time *Brown* was decided. Appellants appear to confuse two distinct causes of action, *i.e.*, the garnishment proceeding and the "bad faith" cause of action filed on December 1, 1992, by Appellants in their answer and new matter to Appellee's declaratory judgment action. As stated above, the two causes of action involve distinct remedies and did not present the same question for the trial court's resolution. *Brown*, 708 A.2d at 107–08. As such, Appellants are bound by the holding of *Brown* in that Appellants may attach only the limits of the deceased's policy in a garnishment action. *Id.*, 708 A.2d at 108.

¶ 11 Turning to the merits of Appellants' argument, we conclude that Appellants' garnishment suit against Appellee

must necessarily fail. This Court ruled previously in *General Accident Ins. Co. of Am. v. Allen*, 708 A.2d at 834–35, that Appellee had no duty to indemnify or insure the deceased for his tortious actions. As such, Appellee was under no obligation to disburse the limits of the deceased's policy to Appellants. Accordingly, Appellants' garnishment claim cannot survive summary judgment.[5] Consequently, Appellants' argument fails.

¶ 12 Next, Appellants argue that their bad faith claim was not barred by the statute of limitations and, alternatively, that their bad faith claims based on the express assignment by the estate of the deceased "relate back" to their original pleading thereby avoiding the bar of the statute of limitations.

¶ 13 We note first that Appellants refer to their December 1, 1992 bad faith suit initiated in their answer and new matter to Appellee's declaratory judgment action. This cause of action alleged primarily that Appellee acted in bad faith with regard to the deceased and Grandmother by failing to accept a reasonable settlement offer. Appellants alleged that Appellee refused Appellants' settlement offer for the suit against Grandmother on May 4, 1992. Thereafter, on August 19, 1992, Appellee offered to settle the claims against both the deceased and Grandmother *via* a structured settlement. Appellants, through counsel, rejected this offer.

¶ 14 In its analysis of the statute of limitations issue, the trial court applied a four-year statute of limitations to Appellants' statutory and contractual bad faith claims. *See, e.g.,* 42 Pa.C.S.A. § 5525. Recently, in *Ash v. Cont'l Ins. Co.*, 861 A.2d 979 (Pa.Super.2004), this Court concluded that statutory bad faith actions are subject to a two-year statute of limitations. *Ash*, 861 A.2d at 983. However, viewing the limitations question on a purely technical basis, Appellants' suit, initiated several months after Appellee's rejection of the settlement offer, falls within both the two-year and four-year limitation periods. *See, e.g., Dalrymple v. Brown*, 549 Pa. 217, 223, 701 A.2d 164, 167 (1997) (statute of limitations begins to run as soon as right to institute and maintain suit arises).

 ¶ 15 Nevertheless, we are unable to conclude that the trial court erred by entering summary judgment in Appellee's favor. If we assume first, in *arguendo*, that Appellants, in the absence of assignments by the deceased and Grandmother, had standing to pursue a bad faith claim on December 1, 1992, Appellants would still not be entitled to relief on their bad faith claims. This is because, as stated above, we held that Appellee was not obligated to defend or indemnify the deceased for his tortious actions. *General Accident Ins. Co. of Am. v. Allen*, 708 A.2d at 834–35. Therefore, there was no duty on the part of Appellee to settle the claims against the deceased. Moreover, as this Court entered judgment n.o.v. in Grandmother's favor in *T.A. v. Allen*, 669 A.2d at 360, no cause of action for bad faith stemming from Appellee's alleged failure to settle could lie against Appellee. Consequently, our holdings rendered moot Appellants' pending bad faith cause of action against the deceased and Grandmother. *In re Duran*, 769 A.2d 497, 502 (Pa.Super.2001) (if event occurs to eliminate active claim or controversy

---

**5.** Appellants make no argument with regard to the garnishment of funds held by Appellee for Grandmother. However, such argument would also fail because Appellee was not required to pay the limit of Grandmother's policy to Appellants because this Court entered judgment n.o.v. in Grandmother's favor in *T.A. v. Allen*, 669 A.2d at 360.

at any stage in the process, case becomes moot).

 ¶ 16 We also conclude that Appellants cannot claim that the "assignment of rights" by the deceased's estate affords them the ability to maintain their bad faith claims against Appellee. As stated above, Appellee did not owe the deceased any duty to defend or indemnify under the insurance policy language. Therefore, the estate's "assignment of rights" was a legal nullity. *See Pennsylvania Higher Education Assistance Agency v. Devore*, 267 Pa.Super. 74, 406 A.2d 343, 344 (1979) (assignment contract confers to assignee no greater right or interest than that possessed by assignor). Further, Appellants did not obtain an assignment of possible causes of action from Grandmother. Consequently, Appellants cannot now claim that the assignment by the deceased's estate acts to preserve possible claims held by Grandmother. Accordingly, we conclude that Appellants' arguments fail. As Appellants' arguments fail, we affirm the judgment of the trial court.

 ¶ 17 Turning to the appeal at 407 WDA 2004, Cross–Appellant General Accident Insurance Company of America contends that the trial court erred when it ordered on September 3, 2003, that Cross–Appellees' bad faith claims be tried before a jury.[6] Inasmuch as we have determined that the trial court's entry of summary judgment in Cross–Appellant's favor was proper, the appeal at 407 WDA 2004 is moot, and we dismiss it. *Duran*, 769 A.2d at 502.

¶ 18 At 327 WDA 2004, judgment affirmed.

¶ 19 At 407 WDA 2004, appeal dismissed as moot.

---

**6.** The trial court's order of September 3, 2003, was interlocutory, and, therefore, is properly before this Court at the present time by virtue of the trial court's entry of summary judgment. *See* Pa.R.A.P. 341(a) (appeals lie from final orders).